## S10A0365. WESTMORELAND v. THE STATE.
## S10A0367. WILLIAMS v. THE STATE.
### (699 SE2d 13)

THOMPSON, Justice.

Amos Westmoreland and John Edgar Williams were jointly indicted, tried, and convicted of felony murder and various other crimes following a crime spree that resulted in the vehicular death of Barbara Turner Robins.[1] In these consolidated cases, both defendants appeal from the denial of their respective motions for new trial. For the reasons that follow, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that on the morning of May 17, 2007, homes belonging to Alison Murphy and Jeanne and George Wern were burglarized in Marietta, Georgia. Among the numerous items taken were jewelry and a large screen television set.

That morning a neighbor driving in the vicinity of the Wern home observed two young males in a blue, older model station wagon, with a blue tarp tied to the roof, and no license plate displayed. The neighbor became suspicious and followed the car. She observed it minutes later parked in the Werns' driveway; the car doors were open and no occupants were visible inside. The police were notified and a marked patrol car arrived in the area as the blue station wagon was leaving the neighborhood. The officer activated his blue emergency lights and siren in an effort to stop the vehicle; however, the driver of the station wagon failed to accede to the officer's signals, and instead drove his vehicle onto Interstate 575 northbound. Additional patrol cars joined in pursuit. The driver of the station wagon continued his attempt to elude the police, and in the process, a large screen television taken from the Wern home dislodged from under a tarp on the roof and crashed onto the roadway. After the police attempted a box maneuver to stop the

---

[1] The crimes were committed on May 17, 2007. On November 30, 2007, both defendants were charged in a multi-count indictment. Trial commenced on October 20, 2008, and on October 23, 2008, both defendants were found guilty of burglary (two counts), attempting to elude a pursuing police officer (two counts), operating a vehicle without a secure load, felony murder predicated on burglary, felony murder predicated on attempting to elude, and obstruction of a police officer. In addition, Westmoreland was found guilty of reckless driving, homicide by motor vehicle, and serious injury by motor vehicle; and Williams was found guilty of an additional count of obstruction of a police officer. Both defendants were sentenced to life imprisonment for felony murder while in the commission of a burglary. In addition, Westmoreland received a consecutive 15-year term for serious injury by motor vehicle, plus concurrent 12-month terms for the misdemeanor counts; Williams received 12-month consecutive terms on the misdemeanor counts, to run together. The remaining counts were merged or vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993). Both defendants filed motions for new trial on November 11, 2008, which were subsequently amended. Both motions were denied on April 15, 2009; timely notices of appeal were filed. Both cases were docketed for the January 2010 term in this Court and submitted for decision on the briefs.

fleeing vehicle, the station wagon executed a U-turn in the median and drove into the southbound lanes of Interstate 575 where it collided with a Buick being driven by Robins and occupied by four passengers. The Buick rolled over twice and landed on its side, killing Robins and seriously injuring the front seat passenger.[2] Both the driver and passenger in the station wagon fled on foot and were pursued by the police and soon apprehended. Georgia identification cards in the pockets of both suspects identified the driver as appellant Westmoreland and the passenger as appellant Williams. Items taken from the two burglarized homes were found in their possession as well as in the station wagon.

### Case No. S10A0365

1. Westmoreland submits that the evidence adduced at trial was insufficient to prove felony murder because the death of the victim was not committed "in the commission" of the burglary, but after the burglary was completed and he was attempting to flee.

> "A homicide is within the res gestae of the underlying felony for the purpose of the felony-murder rule if it is committed while fleeing the scene of the crime. [Cit.] The weight of authority holds that the underlying felony continues during the escape phase of the felony if there is continuous pursuit immediately organized, and the felony terminates at the point the perpetrator has arrived at a place of seeming security or when the perpetrator is no longer pursued by the authorities. [Cits.]" *Collier v. State*, 244 Ga. 553, 560 (3) (261 SE2d 364) (1979).

*Horton v. State*, 249 Ga. 871, 878 (11) (295 SE2d 281) (1982). Here the perpetrators were observed in the area of the burglaries, their vehicle was parked at one of the burglarized homes shortly thereafter, and the police maintained continuous observation of the vehicle as it left the neighborhood and throughout the time that the occupants caused the death of the motorist and were subsequently apprehended. Thus, the homicide is within the res gestae of the underlying felony of burglary for the purpose of the felony-murder rule. *Collier v. State*, supra, overruled on other grounds in *Thompson v. State*, 263 Ga. 23 (2) (426 SE2d 895) (1993). See also *Diamond v. State*, 267 Ga. 249 (2) (477 SE2d 562) (1996) (where police chase began at the scene of the burglary and continued until defendant

---

[2] The State introduced into evidence four DVD recordings made from the dashboard cameras in the patrol cars involved in the pursuit.

crashed her vehicle into another vehicle fatally injuring its three occupants, the burglary is ongoing for purposes of the felony murder rule; "[t]o adopt [the] argument that the burglary was complete when [defendant] left the dwelling house would eliminate burglary as an underlying felony except when the murder occurs in the building that the person enters without authority").

We further reject Westmoreland's assertion that the evidence was insufficient to support his convictions because the vehicle pursuit in this case violated Cobb County Police Department policy and was an intervening cause of the collision. See OCGA § 40-6-6 (d) (1) (the driver of an emergency vehicle in pursuit of a suspected violator is authorized to disregard certain specified rules of the road; however, the statute does "not relieve the driver of . . . the duty to drive with due regard for the safety of all persons"). First, the policy alluded to was not presented to the jury and is not contained in the record on appeal. Accordingly, that material does not factor into our evidentiary review. See *Thompson v. State*, 277 Ga. 102 (1) (586 SE2d 231) (2003). Nonetheless, under OCGA § 40-6-6 (d) (2), when a law enforcement officer is pursuing a fleeing suspect in another vehicle and the suspect injures or kills any person during the pursuit, the "officer's pursuit shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death . . . unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures."[3] And even where such reckless disregard exists, it "shall not in and of itself establish causation." Id.

The evidence was ample for any rational trier of fact to find Westmoreland guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Westmoreland asserts that the trial court abused its discretion because it improperly abridged his right to cross-examine one of the investigating officers concerning Cobb County's vehicle pursuit policy. When the question as to the content of the written policy was posed on cross-examination, the State objected on relevancy grounds, arguing that the issue before the court is whether appellants attempted to flee and elude a marked patrol vehicle, not the county's pursuit policy. The trial court sustained the objection and defense counsel moved on to a different line of questioning.

A party who complains about a restriction on cross-examination " 'must either ask the questions he desires to ask or state to the court what questions he desires to ask and then interpose timely

---

[3] The evidence at trial established that the pursuing vehicles did not exceed the posted speed limit.

objection to the ruling of the court denying him the right to propound the questions.' [Cit.]" *Gober v. State*, 249 Ga. App. 168, 172 (3) (547 SE2d 656) (2001). However, after the trial court sustained the prosecutor's objection, Westmoreland abandoned his line of questioning and posed no objection to the trial court's ruling on the scope of his cross-examination. "Because '[e]rrors not raised in the trial court will not be heard on appeal (cit.),' [cit.], [Westmoreland] has waived this [issue]." *Pinckney v. State*, 285 Ga. 458, 459 (2) (678 SE2d 480) (2009).

3. Westmoreland claims that he was denied effective assistance of counsel at trial and on motion for new trial. In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), appellant "must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. [Cit.]" *White v. State*, 283 Ga. 566, 569 (4) (662 SE2d 131) (2008). We conclude Westmoreland failed to make the requisite showings.

(a) Westmoreland asserts that trial counsel was ineffective in failing to properly investigate and present evidence of Cobb County's policy concerning pursuit of a fleeing suspect.

Trial counsel testified at the hearing on the motion for new trial that he was familiar with the policy because he discussed it during trial with co-defendant's counsel, who was in possession of a copy. Counsel further testified that he did not believe "it was a good idea" to try to put the policy into evidence or to suggest to the jury that the conduct of the officers was the proximate cause of the fatality because he was attempting to convince the jury to acquit on the felony murder charges and to find Westmoreland guilty of a lesser offense; therefore, he feared such an argument would damage his credibility. We find this to be an informed strategic decision that any reasonable attorney would make under the circumstances. See generally *Phillips v. State*, 277 Ga. 161 (587 SE2d 45) (2003). Accordingly, counsel's actions do not amount to ineffective assistance. Id.

(b) In addition, Westmoreland asserts that his first post-conviction counsel was ineffective because he failed to attach to his motion for new trial a written addendum to Cobb County's vehicle pursuit policy which restricts vehicle chases in cases involving crimes such as burglary. We find no reasonable probability that such evidence, had it been introduced, would have resulted in a favorable ruling on the motion for new trial. See *Crawford v. Thompson*, 278 Ga. 517, 520 (603 SE2d 259) (2004) (in a claim of ineffective assistance of appellate counsel, the inquiry focuses on " 'whether there is a reasonable probability that the result of the appeal would have been different' ").

*Case No. S10A0367*

4. In several enumerations of error, Williams asserts that the evidence was insufficient to support his convictions because (a) he was "merely present" as a passenger in the car while the crimes were committed by co-defendant Westmoreland, (b) the statutes defining the crimes of attempting to elude and failure to secure load limit liability to only the driver or operator of a vehicle,[4] and (c) the crimes of burglary were complete before the homicide occurred; thus, the felony murder rule was not invoked.

Testimony at trial established that a young male matching Williams' size, age, and race was observed in the station wagon in the vicinity of the Wern home prior to the burglary, that Williams was a passenger in the vehicle shortly thereafter as it was leaving the neighborhood where the burglaries occurred, that Williams removed his red shirt while in the station wagon to alter his appearance, that a television belonging to the Werns dislodged from the roof of the station wagon and crashed onto the roadway while Williams was a passenger in the car, that Williams ran from the station wagon and fled from the police, and that when he was apprehended, jewelry was found in his pockets and items stolen from the two burglarized homes were found in the passenger floorboard of the car where he had been seated.

(a) "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. [Cit.]" (Punctuation omitted.) *White v. State*, 278 Ga. 499, 500 (1) (604 SE2d 159) (2004). From the evidence of record a rational trier of fact could infer Williams' participation in and criminal intent to commit the crimes for which he was convicted. Id.

(b) With regard to the crime of attempting to elude a pursuing police vehicle,

"[t]he relevant statute, OCGA § 40-6-395 (a) . . . , provides: 'Any *driver of a vehicle* who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to

---

[4] OCGA § 40-6-395 (a) provides: "It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop"; OCGA § 40-6-254 provides: "No person shall operate any motor vehicle with a load on or in such vehicle unless the load on or in such vehicle is adequately secured. . . ."

elude a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor.' [Cit.] But where a passenger flees the scene along with the driver after the police have stopped the vehicle, he becomes chargeable as a party to the crime."

*Cooper v. State*, 281 Ga. App. 882, 884 (2) (637 SE2d 480) (2006). Thus, the jury was authorized to find Williams guilty as a party to the crime of attempting to elude an officer. Similarly, the evidence was sufficient for the jury to find that Williams aided and abetted Westmoreland in failing to secure the television stolen in the Wern burglary.

(c) Because the homicide was within the res gestae of the underlying felony for the purpose of the felony murder rule, the evidence was sufficient to support the felony murder conviction. See Division 1, supra; *Horton*, supra.

5. Williams asserts that the trial court erred in denying his motion to sever his trial from that of his co-defendant.

The question of whether to grant a severance in a joint trial for a capital crime in which the death penalty is not sought is within the discretion of the trial court. In determining whether to grant a motion to sever, a trial court should consider: (1) whether the number of defendants will confuse the jury as to the evidence and the law applicable to each defendant; (2) whether, despite cautionary instructions from the court, there is a danger that evidence admissible against one defendant will be improperly considered against another defendant; and (3) whether the defenses of the defendants are antagonistic to each other or to each other's rights of due process. It is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed.

*Green v. State*, 274 Ga. 686, 687 (2) (558 SE2d 707) (2002). See also OCGA § 17-8-4 (a); *Jones v. State*, 253 Ga. 640 (2) (322 SE2d 877) (1984).

Williams filed a pretrial severance motion. At the hearing on that motion, Williams argued that "he would like the opportunity" to call Westmoreland to exculpate him in the burglaries, and it was Williams' "belief" that Westmoreland would not testify in a joint trial. Although Williams' counsel alluded to an affidavit from Westmoreland that would exculpate Williams in the burglary charges,

none was proffered to the court at that time.[5]

In order to be entitled to a severance on the ground that a co-defendant would give exculpatory evidence in a separate trial

> the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed. (Cits.) Given such a showing, the court should (1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) assess the extent of prejudice caused by the absence of the testimony; (3) pay close attention to judicial administration and economy; [and] (4) give weight to the timeliness of the motion.

(Punctuation omitted.) *Keener v. State,* 215 Ga. App. 117, 118 (1) (449 SE2d 669) (1994). Other than bare conclusory assertions, Williams proffered no evidence at the pretrial hearing, at trial, or on motion for new trial demonstrating that Westmoreland would in fact testify at a separate trial. Thus, he has not made the threshold showing under *Keener.*

Furthermore, Williams has not carried his burden of establishing that severance was required under *Green,* supra. The jury would not be confused by the number of defendants. In addition, almost all evidence admissible against Westmoreland was also admissible against Williams; therefore, there was little likelihood that the jury would confuse the evidence against each defendant. Finally, the defenses were not antagonistic: Westmoreland sought acquittal of the greater offenses and Williams claimed that he merely went along for the ride. We find no abuse of the trial court's discretion in denying Williams' severance motion. Id. at 687 (2).

6. At the conclusion of the State's evidence, Williams sought to introduce into evidence a sworn notarized writing by Westmoreland in which he declared that "Williams picked me up for a ride and had no knowledge of any burglary." Williams argued that the hearsay statement is admissible under OCGA § 24-3-5, which provides that after a conspiracy is proved, hearsay declarations by one conspirator are admissible against all co-conspirators. By its terms, this statutory exception to the hearsay rule "makes declarations of conspira-

---

[5] The only allegedly exculpatory evidence that Williams sought to offer at a separate trial related to the burglary charges against him. We note that the jury found Williams guilty of felony murder predicated on burglary as well as felony murder with the underlying felony of attempting to elude an officer. Thus, a severance would not have insulated him from the alternate felony murder conviction.

tors admissible only against other conspirators. . . . It is the long-standing rule in this state that declarations to third persons to the effect that the declarant and not the accused was the actual perpetrator are, as a rule, inadmissible." (Emphasis omitted.) *Wilson v. State*, 271 Ga. 811, 814 (4) (525 SE2d 339) (1999), overruled on other grounds in *O'Kelley v. State*, 284 Ga. 758 (3) (670 SE2d 388) (2008). See also *Dunbar v. State*, 205 Ga. App. 867, 869 (424 SE2d 43) (1992) (OCGA § 24-3-5 "may only be used against a conspirator and is not a means by which a conspirator may introduce exculpatory evidence" (emphasis omitted)). It follows that the trial court did not abuse its discretion in rejecting Williams' argument and refusing to admit Westmoreland's statement.

7. In the trial court's preliminary instructions to the jury prior to the introduction of evidence, the court gave a pattern instruction on the role of the grand jury and its determination there was "sufficient evidence" to proceed to trial. Williams asserts that the statement was an improper comment on the evidence and conveyed to the jury that another body had already determined some quantum of his guilt.

First, Williams did not object to the preliminary instruction and therefore waived review. Furthermore, the preliminary instruction in this case was identical to that given and approved by this Court in *Catchings v. State*, 256 Ga. 241 (13) (347 SE2d 572) (1986), and, as in *Catchings*, was followed by an instruction on the presumption of innocence. Accordingly, we find no error. Id.

8. Williams submits that he was entitled to a new trial because the prosecutor in closing argument noted that the victim's death certificate reflected that she would have had a birthday that week, and that her granddaughter (who was a passenger in the Buick at the time of impact) would have to celebrate the day without her grandmother. Williams claims on appeal that this argument exceeds the bounds of appropriate victim impact evidence. There was no contemporaneous objection to the allegedly improper argument, and we do not find that these statements rise to the level of "egregiously improper argument [that] might require reversal, even in the absence of objection." *Parks v. State*, 254 Ga. 403, 415, n. 9 (13) (330 SE2d 686) (1985).

9. Williams asserts that he was denied effective assistance of trial counsel under *Strickland v. Washington*, supra. See generally Division 3, supra.

(a) Williams recasts his claim of improper closing argument by the prosecutor as ineffective assistance of trial counsel because of counsel's failure to object thereto. Williams' trial counsel explained at a hearing on the motion for new trial that the prosecutor's comment came at the conclusion of closing argument, and counsel

made the tactical decision not to object because he did not want "a controversy over that last statement to be the absolute last thing the jury heard." See *Holmes v. State*, 273 Ga. 644 (5) (c) (543 SE2d 688) (2001) (where objection may highlight point made by prosecutor, failure to object may be valid strategic decision); *Milner v. State*, 271 Ga. 578 (2) (522 SE2d 654) (1999) (failure to object to closing argument to avoid highlighting unfavorable evidence was reasonable trial strategy). Where, as here, defense counsel "reasonably chose silence . . . we will not use hindsight to second-guess that decision on appeal." *Braithwaite v. State*, 275 Ga. 884, 886 (2) (b) (572 SE2d 612) (2002).

(b) Williams further asserts that trial counsel was ineffective in failing to object on three occasions to testimony by the investigating officers that there had been other burglaries in the area, thereby suggesting that Williams may have committed other crimes. When questioned about this at the hearing on the motion for new trial, trial counsel explained that he made the tactical decision not to object because he did not want to place emphasis on the testimony and thought it "innocuous enough" for the jury to ignore it. We do not find counsel's strategy of avoiding an objection that would draw the jury's attention to unfavorable matters "to be outside the wide range of reasonable professional assistance." *Sweet v. State*, 278 Ga. 320, 324 (5) (602 SE2d 603) (2004).

10. Williams asserts trial court error in admitting certain unspecified photographs "of individuals that were not in issue" in his prosecution. Williams has not identified these allegedly objectionable photographs by citation to the record, exhibit number, subject matter, or in any other manner that would allow this Court to isolate them and review his claim on appeal. Furthermore, the transcript of this three-day trial contains hundreds of photographs.

" '[I]t is a sound rule of appellate practice that the burden is always on the appellant in asserting error to show it affirmatively by the record.' " *Wilbanks v. State*, 251 Ga. App. 248, 268 (19) (b) (554 SE2d 248) (2001). See also Supreme Court Rule 19, n. 1 ("page references to the record (R-) and transcript (T-) are essential"). " '[R]equirements as to the form of appellate briefs were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by [our appellate courts]. . . . [W]e note that it is not our job to cull the record on behalf of a party.' " *Luong v. Tran*, 280 Ga. App. 15, 16 (1) (633 SE2d 797) (2006). In this case we are without any information as to the content of the allegedly objectionable photographs, whether Williams lodged a contemporaneous objection to their admissibility, and if so, the nature of the objection. Accordingly,

we must apply the presumption of regularity and hold that the trial court discharged her duties properly.

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 28, 2010 —
RECONSIDERATION DENIED JULY 26, 2010.

*Jones, Morrison & Womack, Wallace C. Clayton II*, for appellant (case no. S10A0365).

*Edwin J. Wilson*, for appellant (case no. S10A0367).

*Patrick H. Head, District Attorney, Jason R. Samuels, Dana J. Norman, Erman J. Tanjuatco, Amelia G. Pray, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.