S12A1759. JONES v. THE STATE.
(740 SE2d 147)

BLACKWELL, Justice.

Kelcey E. Jones was tried by a Twiggs County jury and convicted of the murder of his four-year-old son, Joshua, and cruelty to a child in the first degree. Jones appeals, contending that the trial court erred when it denied his motion to suppress certain statements that

he made to law enforcement officers, that he was denied a fair trial by the late production of an audio recording, that the trial court erred when it excluded certain testimony and evidence, that the testimony of a witness for the State was improperly bolstered at trial, and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, it appears that the trial court erred at sentencing when it failed to merge the cruelty to a child with the murder, and we must, therefore, vacate the conviction and sentence for cruelty to a child in the first degree. We find no other error, however, and we otherwise affirm the judgment below.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that on September 14, 2003, Jones and his girlfriend, Vontrika Willis, took Joshua to a hospital after Joshua fell on an ant hill and suffered several ant bites, to which he had an allergic reaction. After leaving the hospital, they went to a pharmacy to have a prescription filled for Joshua. The pharmacy, however, was about to close, and so they left without the prescribed medication, returning to Willis's home for the night. The next morning, Willis urged Jones to return to the pharmacy to pick up the medicine for Joshua, and Willis and Jones apparently argued. Jones eventually left for the pharmacy, but before he did, he went into Joshua's room, closed the door, and remained with Joshua for three or four minutes. During that time, Willis heard Jones strike Joshua, and she believed then that Jones was attempting to discipline Joshua.

A few minutes after Jones left for the pharmacy, Willis went to check on Joshua. She found him unresponsive and in soiled clothing, and she tried to clean him up by changing his undergarments. Willis then went to ask a neighbor to help her put Joshua into her car, later explaining that she could not carry Joshua to the car herself because she suffers a disability that precludes her from lifting more than ten pounds. With the help of the neighbor, Willis put Joshua into her car, and she began to drive him to a hospital. Along the way, Willis saw Jones, flagged him down, and told him to follow her to the hospital. Joshua died that day at the hospital. At trial, a medical examiner

---

[1] The events that form the basis for the conviction occurred on September 15, 2003. Jones was indicted on January 9, 2006 and charged with cruelty to a child in the first degree and murder in the commission of a felony, namely cruelty to a child in the first degree. His trial commenced on July 12, 2006, and the jury returned its verdict on July 13, 2006, finding Jones guilty on both counts. Jones was sentenced to imprisonment for life for murder and a consecutive term of imprisonment for twenty years for cruelty to a child. Jones filed a motion for new trial on August 10, 2006, which he amended on September 9, 2011. The trial court denied the motion for new trial on May 4, 2012. Jones timely filed his notice of appeal on June 1, 2012, and the case was docketed in this Court for the September 2012 term and submitted for decision on the briefs.

testified that Joshua died as a result of blunt force trauma to his head and abdomen, that the injuries he sustained were inflicted by another, and that his death was not accidental.[2]

A day or two after Joshua died, Jones and Willis agreed to an interview at the Twiggs County Sheriff's Department. According to Willis, as they were driving to the interview, Jones grabbed her arm and threatened her, saying, "You better not say nothing because I got somebody on the outside." This was the first time that it had occurred to Willis, she later explained, that Joshua might have died of something other than an allergic reaction. When they arrived at the Sheriff's Department, Jones was taken immediately to an interview room. The county coroner was present when Jones was interviewed, and the coroner told Jones that Joshua died from a blow to his abdomen, not from ant bites. When confronted with this information, Jones responded: "I watch CSI, you can't prove I did anything."

Although Jones does not dispute that the evidence is sufficient to sustain his conviction, we have independently reviewed the record, and we conclude that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Jones was guilty of murder and cruelty to a child in the first degree. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Poole v. State*, 291 Ga. 848, 850 (1) (734 SE2d 1) (2012). We do find error, however, in the trial court entering a judgment of conviction and imposing a separate sentence for cruelty to a child in the first degree. Because the felony murder of which Jones was convicted was premised on cruelty to a child in the first degree, the predicate offense merged into the murder as a matter of law. *Culpepper v. State*, 289 Ga. 736, 737 (2) (715 SE2d 155) (2011) ("When the only murder conviction is for felony murder and a defendant is convicted of both felony murder and the predicate felony of the felony murder charge, the conviction for the predicate felony merges into the felony murder conviction." (citation omitted)). For that reason, we vacate the conviction and sentence for cruelty to a child in the first degree. *Chance v. State*, 291 Ga. 241, 242 (1) (728 SE2d 635) (2012).

2. We next consider whether the trial court erred when it denied a motion to suppress certain statements that Jones made during his interview at the Sheriff's Department. Jones contends that these statements should have been suppressed because he was not advised

---

[2] The medical examiner added that the injuries sustained by Joshua were not consistent with him having been spanked.

of his *Miranda*[3] rights before he made the statements. We disagree. *Miranda* warnings are required only when a person is interviewed by law enforcement in a custodial setting, meaning that the person has been formally arrested or has been "restrained to the degree associated with a formal arrest," *Sosniak v. State*, 287 Ga. 279, 280 (1) (A) (1) (695 SE2d 604) (2010), and in this case, the trial court concluded that Jones was not in custody when he was interviewed at the Sheriff's Department. We must accept the factual findings of the trial court about whether Jones was in custody unless those findings are clearly erroneous, *Grier v. State*, 273 Ga. 363, 365 (2) (541 SE2d 369) (2001), and we see no clear error here. The evidence adduced at a pretrial hearing on the motion to suppress shows that Jones came to the Sheriff's Department for an interview voluntarily, that he was not restrained before or during the interview, and that he was not told before or during the interview that he could not leave. Although Jones was arrested after the interview concluded on outstanding warrants issued in another county, the deputy sheriff who conducted the interview testified that he became aware of those warrants only after the interview ended. The trial court was authorized to find, as it did, that Jones was not formally arrested or restrained to a degree associated with a formal arrest before or during the interview, and for that reason, Jones was not entitled to *Miranda* warnings in connection with the interview. See *Bowling v. State*, 289 Ga. 881, 888 (4) (a) (717 SE2d 190) (2011); *Sosniak*, 287 Ga. at 281 (1) (A) (1). The trial court did not err when it denied the motion to suppress.

3. We turn now to the contention that Jones was denied a fair trial because the prosecuting attorneys failed to timely produce an audio recording of an interview of Willis by a Georgia Bureau of Investigation agent. The record shows that this recording was produced to Jones at trial before any witnesses testified, albeit after voir dire had concluded. Because the recording actually was produced, there was no *Brady*[4] violation, and to prevail on his claim of error, Jones must show that an earlier production of the recording would have been beneficial to him and that the delay in production deprived him of a fair trial. See *Hullander v. State*, 271 Ga. 580, 582 (2) (522 SE2d 658) (1999); *Burgeson v. State*, 267 Ga. 102, 104 (2) (475 SE2d 580) (1996). Jones argues that the quality of the recording was compromised when it was played at trial and that he could have made better use of the recording at trial if only it had been produced

---

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).
[4] See *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

earlier.[5] But the claims about the quality of the recording are speculative, inasmuch as Jones's trial lawyer testified at the hearing on the motion for new trial that he recalled nothing about the recording, and the recording itself does not appear in the record on appeal. Moreover, Jones cannot show that he was deprived of a fair trial by the late production of the recording because he did not ask for a continuance to further examine the recording. To the contrary, the court inquired at trial of an investigator assisting Jones's lawyer whether more time was needed to examine the recording, and the investigator responded in the negative. This claim of error is without merit.

4. We next consider whether the trial court erred when it refused to permit Jones to call a surprise witness that Jones failed to disclose to the prosecuting attorney before trial. Generally speaking, the parties are obligated to give notice at least five days before trial commences of any witnesses who may appear at trial. *Hudson v. State*, 284 Ga. 595, 596 (3) (669 SE2d 94) (2008). When a party fails to comply with its obligation to give notice, the trial court may exercise its discretion to exclude the testimony of an unnoticed witness upon a showing of prejudice and bad faith. Id. See also OCGA § 17-16-6. From the record in this case, it appears that the trial court was authorized to find that the State would be prejudiced by the surprise witness because it already had rested its case, and because the prosecuting attorney would have had insufficient time to interview the witness or otherwise prepare for the testimony that the witness might offer. The trial court also was authorized to find that Jones acted in bad faith when he failed to notify the State that the witness might appear, given that Jones was aware of the witness at least a week before trial. See *Hudson*, 284 Ga. at 596-597 (3). The trial court did not err when it precluded this witness from testifying. *Vaughn v. State*, 307 Ga. App. 754, 757 (2) (706 SE2d 137) (2011) (trial court not required to make explicit finding of prejudice or bad faith when excluding evidence under OCGA § 17-16-6).

5. We turn next to the contention that the trial court erred when it refused, Jones says, to permit him to present evidence that the Department of Family and Children Services (DFACS) had investigated Willis concerning her treatment of her own children. Jones

---

[5] Willis was called by the prosecuting attorney as a witness, and her credibility was a key issue at trial. After the State rested, Jones recalled Willis and attempted to use the recording to impeach her earlier testimony that she was unable to carry Joshua to her car. When she was recalled, Willis was asked whether she told the GBI agent that she had "toted" Joshua, and Willis responded that she said she "took" Joshua, not that she "toted" him. Willis explained that the words she spoke to the GBI agent were difficult to understand from the audio recording because she was crying at the time she spoke.

argues that this evidence was important to show that someone else — namely Willis, the only other person with Joshua during the time that he sustained the injuries that led to his death — might have killed Joshua. Before trial, the trial court heard from the lawyers about the possibility that Willis might open the door in her testimony to evidence about the DFACS investigation. Among other things, Jones's lawyer said, "I don't know what we'll present until I hear [Willis's] testimony." After hearing from the lawyers, the court instructed the lawyers as follows:

> [A]s I understand it at this point, there is no present intent to present independent evidence through [DFACS] records and before there will be any questioning of Ms. Willis concerning an investigation of her family by [DFACS], we will have a sidebar and then if we need to have a hearing on it at that point, I'll certainly be glad to hold one.

Jones indicated no disagreement with the premise of these instructions — that the question of the admissibility of evidence about the DFACS investigation would arise, if at all, only when Willis testified — and Jones did not dispute the understanding of the trial court that he had no present intent to present such evidence other than through a cross-examination of Willis. Although the trial court forbade the lawyers to go into the DFACS investigation without further discussion, it made no final ruling on the admissibility of evidence of the investigation, and instead essentially deferred a final ruling until the question ripened at trial. When Willis testified, however, she never mentioned the DFACS investigation, and Jones never asked for a sidebar to discuss the admissibility of such evidence. As such, he failed to procure a ruling on the admissibility of evidence of the DFACS investigation, and he has, therefore, failed to preserve the issue for appeal. See *Dasher v. State*, 285 Ga. 308, 311 (4) (676 SE2d 181) (2009); *Brooker v. Brown*, 307 Ga. App. 10, 11 (3) (703 SE2d 692) (2010) ("Where, as here, the trial court reserves ruling on the admissibility of evidence, the subsequent failure to invoke a ruling from that court preserves nothing for appellate review." (citations omitted)).

6. We now consider the contention that the trial court erred when it allowed the GBI agent who had interviewed Willis to bolster her testimony. Jones failed at trial to voice any contemporaneous objection to this testimony. Accordingly, Jones has not preserved any bolstering objection for appellate review. *Thomas v. State*, 318 Ga. App. 849, 855 (4) (c) (734 SE2d 823) (2012).

7. Finally, we turn to the claim that Jones was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance, Jones must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington,* 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To show that the performance of his lawyer was deficient, Jones must prove that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrison,* 477 U. S. 365, 381 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). And to show that he was prejudiced by the performance of his lawyer, Jones must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U. S. at 694 (III) (B). See also *Williams v. Taylor,* 529 U. S. 362, 391 (III) (120 SC 1495, 146 LE2d 389) (2000). This burden, though not impossible to carry, is a heavy one. See *Kimmelman,* 477 U. S. at 382 (II) (C). We conclude that Jones has failed to carry his burden.

(a) Jones contends that his trial lawyer was ineffective because he failed to offer a "timeline" to show that Willis delayed taking Joshua to the hospital. At the hearing on the motion for new trial, Jones's trial lawyer testified that he did not believe a "timeline" would have been helpful because Willis never provided exact times in her testimony. Moreover, nothing in the record indicates that any delay in seeking medical attention contributed to Joshua's death. Accordingly, trial counsel did not perform unreasonably when he failed to present a "timeline" defense, and the presentation of "timeline" evidence would not have affected the outcome of the trial in any event.

(b) Jones also asserts that his trial lawyer was ineffective when he failed to obtain Willis's employment records, which would have shown that she had no work restrictions prohibiting her from lifting more than ten pounds. The GBI agent, however, corroborated Willis's testimony that she could not carry Joshua the entire distance to her vehicle. It is unlikely that an absence of work restrictions in her employment file would have changed the outcome of the trial.

(c) Jones complains that his trial lawyer failed to give timely notice to the State of the surprise witness who subsequently was precluded from testifying. See Division 4, supra. Jones contends that the testimony of this witness was crucial to his defense because the witness would have testified, Jones says, that Willis abused her own children. But Jones did not present testimony from this witness at the hearing on his motion for new trial, nor has he offered any legal

substitute for the testimony of the witness. As we have cautioned before, when a defendant alleges ineffective assistance of counsel based on the failure of his counsel to secure the testimony of a particular witness, the defendant "must introduce either testimony from the uncalled witness or a legally recognized substitute for his testimony." *Cartwright v. State*, 291 Ga. 498, 500 (2) (b) (731 SE2d 353) (2012) (citation and punctuation omitted). Because Jones failed to do so, his contention that the outcome of the trial would have been different had the witness testified is wholly speculative and cannot sustain a claim of ineffective assistance of counsel. Id.

(d) Finally, Jones contends that his trial lawyer was ineffective because he failed to object to the GBI agent improperly bolstering Willis's testimony. Willis was a key witness for the State at trial, and in an effort to undermine her credibility, Jones's trial lawyer tried to identify several inconsistencies in her story. Among other things, Jones's lawyer called the GBI agent as a witness to elicit testimony that Willis had told the agent that she carried Joshua to her car, notwithstanding her testimony that she was unable to lift the child. On cross-examination, the prosecuting attorney asked the GBI agent whether Willis had been consistent in the accounts that she had given to him and whether he believed that she had been truthful during the investigation. The GBI agent responded affirmatively to both questions, and Jones's trial lawyer voiced no objection to this testimony. See Division 6, supra.

At the hearing on the motion for new trial, Jones's trial lawyer said that, in "hindsight," some of the testimony of the GBI agent "arguably could have been bolstering" and "was probably objectionable."[6] But hindsight has no place in an assessment of the performance of trial counsel, the United States Supreme Court having instructed that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U. S. at 689 (III) (A). Instead, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id., and to overcome that presumption, Jones must show that no reasonable counsel would have failed to object to the bolstering testimony of the GBI

---

[6] The testimony of the GBI agent about Willis's truthfulness certainly would have been subject to an objection on the ground of improper bolstering. See *Bly v. State*, 283 Ga. 453, 459 (3) (660 SE2d 713) (2008) ("a witness . . . can never bolster the credibility of another witness as to whether the witness is telling the truth"). The testimony about the consistency of Willis's prior statements to the agent was less clearly objectionable, but we will assume without deciding that this testimony also would have been subject to a bolstering objection.

agent. See *Hayes v. State*, 279 Ga. 642, 645 (3) (619 SE2d 628) (2005). Jones cannot carry this burden.

We can think of several reasons that a reasonable lawyer might not have objected to the bolstering testimony at issue.[7] In the first place, a sound defense strategy is to show that the law enforcement investigation that led to the prosecution was not as thorough or objective as it should have been, and one way to make such a showing is by evidence that the investigators put too much faith in an unreliable witness. In this case, the prosecution case depended substantially on Willis, and by the time the GBI agent testified on cross-examination, Jones's lawyer already had successfully brought out several arguable inconsistencies in the accounts offered by Willis at and before trial. In these circumstances, it would not have been unreasonable for counsel to decline to object to the bolstering testimony, inasmuch as it only stressed that law enforcement had much confidence in Willis as a witness, the inconsistencies of her accounts notwithstanding. See *Green v. State*, 281 Ga. 322, 323-324 (2) (638 SE2d 288) (2006) (defense attorney "was seeking to undermine [the] testimony by mocking the detective's belief in a witness whose statements were so inconsistent"). Moreover, a reasonable lawyer might have concluded that the bolstering testimony was not likely to be very harmful, inasmuch as "[i]t hardly would have surprised

---

[7] The special concurrence finds it "peculiar for this Court to go through a litany of possible reasonable strategies and assume defense counsel acted pursuant to one of them," considering that the trial lawyer for Jones did not offer any strategic reasons for his failure to object to the bolstering testimony when he appeared at the hearing on the motion for new trial. That approach, however, is precisely what *Strickland* compels, inasmuch as "counsel is strongly presumed to have . . . made all significant decisions in the exercise of reasonable professional judgment," 466 U. S. at 690 (III) (A), and it is the defendant's burden to prove otherwise and to overcome the presumption. Id. at 689 (III) (A). That the lawyer failed to articulate any strategic reasons for his failure to object makes no difference. A proper assessment of the performance of counsel "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, ___ U. S. ___ (IV) (A) (1) (131 SC 770, 178 LE2d 624) (2011). As we have explained before, " '[a]lthough the thinking of the lawyer may be relevant to our inquiry, we must remember that our inquiry is focused on what the lawyer did or did not do, not what he thought or did not think.' " *Powell v. State*, 291 Ga. 743, 748 (2) (b), n. 2 (733 SE2d 294) (2012). Put another way, "it is the *conduct* of the lawyer, not his *thinking*, that we assess for reasonableness, even though the thinking of the lawyer may inform the reasonableness of his conduct." Id. (emphasis in original). See also *Roe v. Flores-Ortega*, 528 U. S. 470, 481 (II) (A) (120 SC 1029, 145 LE2d 985) (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." (citation omitted)); *Chandler v. United States*, 218 F3d 1305, 1316 (V), n. 16 (11th Cir. 2000) ("To uphold a lawyer's strategy, we need not attempt to divine the lawyer's mental processes underlying the strategy. . . . If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And, our inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one." (citations omitted)).

anyone observing the trial to learn" that law enforcement believed Willis's accounts, "and any rational juror could have surmised as much without being told explicitly."[8] *Butler v. State*, 292 Ga. 400, 406, 407 (3) (a) (738 SE2d 74) (2013) (citations omitted). And to the extent that the bolstering testimony might be harmful, a reasonable lawyer might have concluded that objecting to it could signal to the jury that the defense was worried about such testimony, thereby emphasizing the testimony and magnifying any harmful implications of it. See *Westmoreland v. State*, 287 Ga. 688, 696 (9) (b) (699 SE2d 13) (2010). For all these reasons, we conclude that the failure to object to the bolstering testimony was not deficient performance, and Jones has failed to carry his burden to prove that he was denied the effective assistance of counsel.

*Judgment affirmed in part and vacated in part. All the Justices concur, except Benham, J., who concurs specially.*

BENHAM, Justice, concurring specially.

Although I agree with the final outcome of the opinion, I write because I disagree with the majority's analysis in Division 7 (d). Unlike the majority, I believe defense counsel was deficient when he failed to object to the improper witness bolstering that occurred in this case. Defense counsel called the GBI agent during the defense's presentation of its evidence in order to impeach Willis on her testimony during the State's case-in-chief that she could not carry the child because of a disability. Specifically, on direct examination by the defense, the GBI agent testified that his notes reflected that Willis told him she "attempted to clean the [child] and carry [him] to her vehicle," but was unable to carry the child beyond her living room. The GBI agent's recounting of Willis's prior statement to him appeared to be contradictory to Willis's testimony that she could not carry the child at all. On cross-examination, the prosecutor sought to rehabilitate Willis by asking the GBI agent whether Willis was consistent with her story to the authorities and whether he believed Willis to be truthful during the investigation and the GBI agent answered both questions in the affirmative. This testimony elicited by the State on its cross-examination of the GBI agent constituted improper bolstering of Willis's prior testimony. There is no dispute that defense counsel failed to object to the improper bolstering. I cannot join in the

---

[8] Jones and Willis, after all, were the only persons with access to Joshua during the time that he sustained the injuries that led to his death. That Jones was being prosecuted for Joshua's murder, and Willis was not – as well as the fact that Willis was the key witness for the prosecution – made it rather obvious that law enforcement and the prosecution accepted her accounts of the events that led to Joshua's death.

majority's conclusion that counsel's failure to object was reasonable and did not constitute deficient performance.

Willis's credibility was critical to appellant's defense as she was the only person, other than appellant, who was with the child prior to his death. Allowing the State to use a law enforcement officer to bolster the material witness's truthfulness without any objection by the defense was not objectively reasonable in the circumstances of this case. Indeed, this case is distinguishable from the cases cited by the majority in support of its analysis. For example, in *Green v. State*, 281 Ga. 322 (2) (638 SE2d 288) (2006), defense counsel cross-examined a detective about the truthfulness of another witness's testimony. The record showed the testimony was not improper bolstering because defense counsel had first questioned the detective about numerous inconsistencies in the witness's testimony and then defense counsel asked the detective whether he believed the witness. We found that defense counsel, rather than bolstering the other witness's testimony, was mocking the detective's belief of an inconsistent witness and thus was not deficient in his performance. *Green* does not involve, as here, a defense counsel's failure to object to the State's using improper bolstering to rehabilitate the credibility of a material witness. Likewise, neither *Butler v. State*, 292 Ga. 400 (738 SE2d 74) (2013) nor *Westmoreland v. State*, 287 Ga. 688 (699 SE2d 13) (2010), involves a defense counsel's failure to object to improper bolstering testimony elicited by the State. Furthermore, unlike the defense attorney in *Westmoreland* who articulated a strategy for his actions, appellant's trial counsel, although questioned extensively at the motion for new trial hearing about his failure to object, never mentioned a strategic reason for his conduct,[9] but rather said he should have objected to the improper bolstering. Therefore, this issue cannot be resolved under the deficiency prong of the *Strickland v. Washington* standard for ineffective assistance of counsel.

I do believe, however, the matter is appropriately resolved under the prejudice prong. That is, appellant has not shown that but for his counsel's failure to object to the improper bolstering, the outcome of the trial would have been different. Indeed, the GBI agent's testimony did not wholly impeach Willis's testimony because it was consistent with Willis's testimony to the extent it showed that she was unable to carry the unconscious child the entire distance from inside her home to her vehicle. Thus, regardless of whether an

---

[9] In the absence of evidence that counsel made a strategic decision, it seems peculiar for this Court to go through a litany of possible reasonable strategies and assume defense counsel acted pursuant to one of them.

objection had been made, the jury was free to reasonably conclude that Willis was not able to carry the child a great distance because of her disability. In addition, the evidence showed that after appellant spent three to four minutes alone with the child in the child's room and was heard hitting the child, the child was unconscious. The medical examiner testified that the child's lack of consciousness and the child's subsequent death resulted from blunt force trauma to the head, as if the child had been struck against an immobile object, and blunt force trauma to the child's abdomen, as if the child had been punched and/or kicked. No contrary evidence was proffered at trial. Given the strong evidence of appellant's guilt, he has failed to show he was prejudiced by any deficiency on the part of his trial counsel.

DECIDED MARCH 18, 2013.

*Verna L. Smith*, for appellant.
   *L. Craig Fraser, District Attorney, Robert B. Faircloth, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine T. Parvis, Assistant Attorney General*, for appellee.