294 Ga. 883
FINAL COPY

S13A1608.  HARTSFIELD v. THE STATE.

HUNSTEIN, Justice.

Appellant Deanthony Hartsfield was convicted of felony murder, armed robbery, and aggravated assault in connection with the June 29, 2010 shooting death of Dominique George.  Hartsfield appeals the denial of his motion for new trial and his conviction and sentence, asserting that the trial court erred by denying his motion for mistrial and that trial counsel rendered ineffective assistance.  Finding no error, we affirm.[1]

Viewed in the light most favorable to the jury's verdict, the evidence

[1] In the September term of 2010, a DeKalb County grand jury indicted Hartsfield, Vincent Ray Thomas, Ladrina Johnson, Monesha L. Lackley, and Robert B. Jones for malice murder, felony murder, armed robbery, and aggravated assault. Lackley, Johnson, and Thomas pled guilty to armed robbery and were each sentenced to 20 years, with 15 to be served in custody and the balance probated.  Jones' trial was severed from Hartsfield's trial prior to jury selection, and Jones later pled guilty to voluntary manslaughter.  The case against Hartsfield proceeded to a jury trial in October 2011.  Lackley and Johnson testified against Hartsfield at trial while Thomas refused to testify.  The jury convicted Hartsfield of felony murder, armed robbery, and aggravated assault and acquitted him of malice murder.  On October 26, 2011, the trial court sentenced Hartsfield to life imprisonment for felony murder and a concurrent ten-year term for armed robbery, with the remaining count of aggravated assault merging into the felony murder.  On November 2, 2011, appellant's trial counsel filed a motion for new trial, which was amended on September 5, 2012, by new appellate counsel.  The trial court held a hearing on Hartsfield's motion for new trial on January 29, 2013, and issued an order denying the motion on February 22, 2013.  On March 22, 2013, Hartsfield filed a notice of appeal. The appeal was docketed to the September 2013 term of this Court and was thereafter submitted for decision on the briefs.

adduced at trial established as follows. On the afternoon of June 28, 2010, teenagers Ladrina Johnson and Monesha Lackley went to George's apartment at the Avondale Station Apartments complex in Decatur, where George lived with his cousin, Brandon Smith. The four of them went to the pool and afterward returned to the apartment to smoke marijuana, eat, watch movies, and play video games. At some point during the evening, Smith caught George flashing his money in front of one of the girls. The following morning, Smith left for work, leaving the other three in the apartment's living room. Johnson, Lackley, and George smoked marijuana that morning.

At some point, Johnson walked out of the apartment with George's cell phone and went through George's text messages. Lackley eventually joined Johnson, and Johnson showed Lackley a text message from Smith calling Lackley a derogatory name because she would not have sex with Smith. Johnson told Lackley that they could get back at George by robbing him, and Lackley agreed. Lackley and Johnson then went back upstairs to the apartment.

Johnson saw George sitting on the floor of his apartment with his money. She left the apartment again with George's phone and went downstairs to call Vincent Thomas. Johnson told Thomas where she was and where everything

was located in the apartment so that Thomas, Robert Jones, and Hartsfield could rob George. Johnson then returned upstairs to the apartment and asked George why he did not have a gun. George responded that he did not need a gun. One of the three men called George's phone, and Johnson took the call downstairs. She gave Hartsfield directions to George's apartment. Johnson and Lackley then left the apartment and walked to a nearby Waffle House to meet Thomas, Jones, and Hartsfield.

Hartsfield arrived at the Waffle House driving a green Mazda Protegé in bad condition, with Jones and Thomas riding as passengers. Johnson recognized the car as belonging to Hartsfield, having ridden in it with him before. After Lackley and Johnson got into the car, Johnson told everyone where George's apartment was located, where George kept money and marijuana in the apartment, including in his pants pockets, and that George did not have a gun. Johnson saw that Jones and Hartsfield had guns in the car.

Hartsfield drove the five of them to George's apartment. Jones and Hartsfield got out of the car and went to the apartment, while the other three remained in the car. Approximately 10 to 15 minutes later, both Lackley and Johnson heard three gunshots. Jones and Hartsfield returned to the car about

2

five minutes later carrying guns and the shorts that George had been wearing earlier that morning. As they drove away, Hartsfield said, "Everyone in . . . this car has a murder charge right now, so no one needs to say anything."

Hartsfield drove the car to the home of Jessica Jones, who was Robert Jones' sister and the mother of Hartsfield's two children. There, Hartsfield split up George's money and marijuana. Johnson received less than $100 and Lackley received $20 to $30. The girls stayed at Jessica Jones' house and smoked marijuana before leaving later that day.

The first officer on the scene found George's apartment with the door open, music blaring, and no signs of forced entry. George was in his bathroom in a fetal position, bleeding from gunshot wounds. The officer observed that the body was cold to the touch. The apartment appeared to the officer to have been searched. The medical examiner testified that George had been shot three times and that he died from a gunshot wound to the chest. George also had scrapes on his face and his knees indicating an assault before his death. A GBI firearms examiner testified that there were a minimum of two guns fired at the scene; no guns were recovered.

Detectives met with Smith, and he identified Johnson and Lackley as the

3

women who were at the apartment with George the morning of the shooting. During police interviews, Johnson and Lackley each implicated Hartsfield in the crimes. Police issued an arrest warrant for Hartsfield in July 2010, and he was arrested in Texas on April 8, 2011.

1. Though Hartsfield has not enumerated the general grounds, we find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Hartsfield was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); see also Vega v. State, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'") (citation omitted).

2. Hartsfield argues that the trial court erred by not granting his motion for a mistrial after the State presented improper character evidence against a key defense witness. Johnson's mother, Shaundette Watkins, testified on behalf of Hartsfield, that when Johnson returned home several days after the incident, she started crying and erasing messages from her phone and told Watkins what had occurred on June 29. According to Watkins, Johnson said that only four people were in the car — Thomas, Jones, Lackley, and Johnson — and that Jones and

4

Thomas had gone up to George's apartment. Watkins testified that Johnson never mentioned that Hartsfield had anything to do with the crimes.

On cross-examination, the State elicited testimony from Watkins conceding that she and Johnson were not close and that Johnson had run away from home several times. The prosecutor then asked Watkins whether part of the reason that she did not have a great relationship with her daughter was because Watkins had been absent from Johnson's life, to which Watkins eventually responded, "Yes, I was gone for seven years." The prosecutor responded, "Yep. And where were you for that seven years?" Watkins replied that she had been in prison.

Defense counsel objected to the testimony as being irrelevant, but the trial court interrupted his objection, dismissed the jury, and stated that the testimony was improper character evidence because the State could not elicit information from a witness that she had been in prison unless the State intended to impeach the witness with a certified copy of her conviction. The prosecutor asserted that while he was aware that Watkins had a criminal record, he expected her to testify that she had been in North Carolina, and that he had only intended to establish that Watkins had been an absentee parent. At this point, defense counsel moved for a mistrial and a curative instruction if the court denied the motion. The trial

court denied Hartsfield's motion for a mistrial, but gave a curative instruction when the jury returned, directing the jury to "totally disregard" the last question from the State and Watkins' response as irrelevant and improper character evidence and to "not consider [the improper evidence] at all in your decision in this case." The court then admonished the prosecutor and concluded by asking whether any of the jurors had questions about the instruction or could not follow it, to which no one responded. At this point, the State proceeded with its cross-examination.

As an initial matter, because Hartsfield failed to renew his motion for mistrial following the trial court's admonishment and curative instruction, he has waived the issue on appeal.[2] McCoy v. State, 273 Ga. 568 (8) (544 SE2d 709) (2001) (where the court gave a curative instruction and the defendant neither objected to the curative instruction or renewed his motion for mistrial, issue not preserved for appellate review); Ford v. State, 269 Ga. 139 (3) (498 SE2d 58) (1998) (same).

Even if Hartsfield had preserved this issue and assuming Watkins'

---

[2] Hartsfield raises his trial counsel's failure to renew the mistrial motion as a ground for ineffective assistance of counsel, which we address in Division 3 (a) below.

testimony about her prior conviction was inadmissible, we would find no error in the trial court's denial of the motion for mistrial. "The decision to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." Jackson v. State, 292 Ga. 685, 689 (4) (740 SE2d 609) (2013). Here, the trial court's immediate curative instruction, striking from the record the prosecutor's question and Watkins' response, and admonishment of the prosecutor in front of the jury preserved Hartsfield's right to a fair trial. Accordingly, the trial court did not abuse its discretion when it denied Hartsfield's motion for a mistrial. See McKibbins v. State, 293 Ga. 843 (3) (c) (750 SE2d 314) (2013) (no abuse of discretion in denial of a mistrial where the trial court sustained the objection, admonished the prosecuting attorney in the presence of the jury, and told the jury to disregard the statement); cf. Jackson, 292 Ga. at 689 (no abuse of discretion in denying a mistrial where trial court gave curative instructions following a reference to a prior drug arrest involving the accused).

3. Hartsfield argues that his counsel was ineffective for failing to (a) renew his motion for a mistrial and (b) object to hearsay testimony. To establish

7

ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Id. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. Id. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012). With these standards in mind, we now turn to each of Hartsfield's arguments.

(a) Hartsfield asserts first that his counsel was ineffective for failing to renew his motion for a mistrial after the court's curative instruction. Even if trial counsel had renewed the motion for mistrial after the court gave the curative instruction, Hartsfield cannot demonstrate prejudice. See Sanders v. State, 290 Ga. 445 (4) (721 SE2d 834) (2012). As discussed in Division 2 above, the trial court did not abuse its discretion when it denied Hartsfield's motion for mistrial and gave a curative instruction, and thus, there is not a reasonable probability that renewing the motion for a mistrial after the curative instruction would have changed the outcome of the trial. See id. Accordingly, we conclude that Hartsfield was not denied effective assistance of counsel in this respect.

(b) Hartsfield next contends that his trial counsel was ineffective for failing to object to certain testimony by the lead detective, which Hartsfield claims was hearsay and violated the Confrontation Clause. The lead case detective, William Wallace III, testified at trial about his investigation of the case, including that a dark Mazda Protegé had been involved in the crime. When asked by the prosecutor if he recalled anything distinctive about the car, Detective Wallace testified as follows:

The most distinctive thing, witnesses at the scene were advising that

it was a loud vehicle. The muffler was bad or – or made a lot of noise as it left. But as it was leaving the scene — obviously, the gunshots were heard, people looked outside, and the most distinctive thing about the vehicle was that the rear bumper was dragging the ground hanging off the car. So it was pretty distinctive. Yes, sir.

Detective Wallace then explained that a car matching that description was located at Hartsfield's residence. None of the witnesses at the scene referenced by Detective Wallace testified at trial.

Hartsfield argues that trial counsel's failure to object to this hearsay testimony was deficient performance and prejudiced him by bolstering the credibility of Johnson and Lackley that Hartsfield participated in the crimes. We find that counsel did not perform deficiently. At the motion for new trial hearing, Hartsfield's trial attorney testified that he did not have a specific recollection of why he failed to object to the hearsay testimony. He explained that his thought process might have been that he believed that the State was going to call the declarants to testify about these statements, and therefore, any objection to the introduction of their out-of-court statements would be overruled. However, he admitted that he should have objected when the State rested and failed to call these declarants to testify, and he could not recall at the hearing why

10

he did not do so during trial. Trial counsel also explained that in general his trial strategy is to minimize his objections because jurors typically think the defense has something to hide when counsel objects repeatedly to "things that might be inane." Finally, counsel also recalled that he believed Detective Wallace was so unprepared and ambivalent about the case, as demonstrated by the fact that he could not recall witnesses' names, and that he may have decided to use this to his advantage during his closing argument by telling the jury that it should not believe any of Detective Wallace's testimony.

The fact that trial counsel could not specifically recall why he did not object to Detective Wallace's testimony and that he admits in hindsight he should have objected is of no consequence to our assessment. See Jones v. State, 292 Ga. 593 (7) (d) (740 SE2d 147) (2013). As we have explained, "hindsight has no place in an assessment of the performance of trial counsel," and when evaluating deficient performance, the proper inquiry "is focused on what the lawyer did or did not do, not what he thought or did not think." (Citation and punctuation omitted.) Id. at 600-601 & n. 7. The proper assessment is "an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." Harrington v. Richter, ___ U. S. ___ (131 SCt 770,

11

790 (IV) (A) (1), 178 LE2d 624) (2011).

Looking then at the objective reasonableness of counsel's performance, we find that there were sound strategic reasons for not objecting to Detective Wallace's testimony, including the reasons surmised by trial counsel at the new trial hearing. First, it was a reasonable trial strategy not to object to Detective Wallace's testimony at the time he testified because if the objection had been sustained, the State could have called the declarants to testify. See Powell v. State, 291 Ga. 743 (2) (b) (733 SE2d 294) (2012) (where the trial lawyer could not recall any strategic thinking for failing to object, finding no deficient performance because under the circumstances a defense lawyer might have reasonably concluded that little would have been gained by an objection); Morrison v. State, 278 Ga. 808 (3) (607 SE2d 577) (2005) (no ineffective assistance of counsel where attorney failed to object to a prior conviction because he reasoned that the court would not have sustained the objection).

Second, once the State rested its case and failed to call the declarants to testify, it was a sound defense strategy to minimize objections in an effort to show the jury that the defense had nothing to hide and to instead focus on discrediting Detective Wallace's testimony in counsel's closing argument. See

Alexis v. State, 313 Ga. App. 283 (3) (a) (721 SE2d 205) (2011) (finding no deficient performance where trial counsel did not raise a hearsay objection to a detective's testimony because he opted to discredit the detective's investigation through cross-examination and at closing, and noting that if an objection had been sustained, the prosecution could have simply recalled the declarant to the stand); Coburn v. State, 252 Ga. App. 315 (4) (a) (555 SE2d 750) (2001) (trial counsel's strategy, to not object to hearsay testimony from a detective because he did not want the jury to have the impression he was trying to hide something, was reasonable).

Finally, the record shows that part of the defense's theory of the case was to establish that there was no evidence that Hartsfield was in the car, even though his car may have been used by others to commit the crimes. Jessica Jones testified for the defense that the ignition was broken in Hartsfield's car and that many people had used this car without Hartsfield's permission, including both Thomas and Jones. Thus, it was a reasonable trial tactic not to object to Detective Wallace's testimony, where a finding that Hartsfield's car was observed at the crime scene would not necessarily undermine Hartsfield's defense. See Atkins v. State, 274 Ga. 103, 106 (5) (549 SE2d 356) (2001) (trial

13

counsel's decision not to object to testimony because he did not want to draw attention to the statements and overemphasize them to the jury was given "substantial latitude"). All of these trial strategies fall within the wide range of reasonable professional assistance, and therefore, Hartsfield has failed to carry his burden to prove that he was denied effective assistance of counsel. See Jones, 292 Ga. at 601-602 (even where trial counsel admitted that some of the testimony was probably objectionable, finding no deficient performance because there were several reasons why a reasonable lawyer might not have objected).

Judgment affirmed. All the Justices concur.

Decided March 28, 2014.

Murder. DeKalb Superior Court. Before Judge Hunter.
Lynn M. Kleinrock, for appellant.
Robert D. James, Jr., District Attorney, Leonora Grant, Elizabeth A. Baker, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jerry W. Chappell II, Assistant Attorney General, for appellee.