## A10A1788. SCHENCK v. THE STATE.

(706 SE2d 218)

ADAMS, Judge.

Anthony Marcus Schenck was convicted by a jury of driving under the influence. He appeals following the denial of his amended motion for new trial, challenging the sufficiency of the evidence and arguing that the trial court should have declared a mistrial after the prosecutor impermissibly commented on his failure to testify at trial.

The evidence presented at trial, construed to support the jury's verdict, showed that on December 14, 2008, Keith Lengacher, a long haul truck driver from Indiana, was driving along Interstate 75 near Chattanooga, Tennessee when he came upon a slow moving vehicle traveling in the middle lane of the three southbound lanes. Lengacher moved into the right-hand lane to pass the vehicle, but the vehicle moved toward him and was about to strike the side of his truck, forcing Lengacher to move over to avoid a collision. The vehicle continued to speed up and slow down and to weave across all three lanes. Because of the erratic manner in which the vehicle was being driven, Lengacher became concerned for his safety and the safety of other drivers so he continued to follow the driver. After observing the vehicle for another mile or two, Lengacher decided to call 911. During the call, a recording of which was played at trial, Lengacher described the vehicle, gave the license tag number and described the manner in which the vehicle was being driven. Lengacher continued to follow the vehicle until the responding officer got behind it and executed a stop

as it was exiting off the highway. Lengacher testified he observed the vehicle almost hit a guard rail as it was exiting and being stopped.

Officer Thomas Agredano of the Tunnel Hill police department responded to a Be On the Lookout (BOLO) issued as a result of Lengacher's 911 call. Agredano spotted the vehicle traveling down the interstate and pulled in behind it. He also activated the video camera inside his vehicle, and the recording was introduced at trial. Agredano testified he observed that the vehicle was being driven at a slow rate of speed and that it was weaving across its lane, crossing over the divider lines between the lanes and back over the fog line several times; the video recording also showed the vehicle going from one side of the lane to the other. Based on these observations, Agredano decided to initiate a stop of the vehicle.

After the stop, Agredano approached the vehicle and observed that there were four persons in the vehicle, including the driver, subsequently identified as Schenck. Agredano testified he noticed the odor of alcoholic beverage coming from inside the vehicle and asked Schenck to step outside. The video showed and Agredano testified that Schenck was unsteady on his feet and veered into the side of the vehicle as he exited. Agredano also testified that Schenck's speech was slightly slurred, his eyes were bloodshot and glassy and that a strong odor of alcohol was coming from his breath or person, all of which, along with the unsteadiness, were additional indicators of impairment. Agredano testified that once Schenck exited the vehicle he had no doubt the odor was emanating from him, especially since Schenck mentioned that he had consumed a couple of beers or drinks.

Based on his observations, Agredano requested that Schenck perform several standardized field sobriety tests. Agredano testified, and the video recording confirmed, that Schenck had difficulty following the instructions for the tests and that despite being given several opportunities, he could not successfully complete the tests; this failure also indicated impairment.

Schenck then agreed to blow into an alcosensor, which indicated positive for alcohol. Schenck was placed under arrest and Agredano read him the implied consent warnings. Schenck, who Agredano testified was "rambling" and making statements about being smarter than Agredano thought, refused to take the state adminis-tered test. During the ride to the police station, Schenck made various statements to Agredano, including that he was in better physical shape than Agredano and that he wanted to fight him. Agredano also stated that Schenck made remarks of a threatening nature toward Agredano's daughter, and although it upset him to hear those remarks, "it appeared [to him] that it was the alcohol talking. It didn't appear that the threats were valid."

YALE LAW LIBRARY

1. Schenck first argues that his constitutional and statutory rights were violated when the State commented on his failure to testify at trial. During closing argument, the prosecutor stated:

> Now, in this case, [defense counsel] wishes to point you to numerous pieces of evidence to call them into question. There are some pieces of the puzzle that are not called into question. I didn't hear much about [Schenck's] demeanor. You saw it here in court. The court will instruct you when you are back in that jury room, you are to assess the credibility of the witnesses. . . . Now, the Judge will instruct you, at the end of this trial, you are not to hold it against the defendant that he did not testify. That's a right in our country and you uphold that right. But did the defendant testify, [the prosecutor made air quotation marks around the testify] No. He didn't take the witness stand —

Defense counsel then objected, and the prosecuting attorney indicated that he was not commenting on Schenck's failure to testify but on the video recording that was introduced at trial. The trial court overruled the objection "if that's what you're referring to."

The prosecuting attorney then continued the argument: "Let's make that clear. We're not talking about here in court. We're talking about the video." Additionally, he commented, "[u]nderstand that evidence that was played for you today, that's as good as evidence that's on that witness stand. In fact, in some ways, it's better." The prosecutor continued his closing remarks, referring numerous times throughout the remainder of his argument to the videotape.

> As a rule of both constitutional law and Georgia statutory law, a prosecutor may not make any comment upon a defendant's failure to testify at trial. [Cits.] Generally, comments made by the State regarding the defendant's decision not to testify may constitute reversible error if (1) the prosecutor's manifest intention was to comment on the accused's failure to testify, or (2) the remark was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify.

(Citations and punctuation omitted.) *Cannon v. State*, 288 Ga. 225, 230 (6) (c) (702 SE2d 845) (2010).

But, as the trial court noted, our appellate courts have emphasized many times that the allegedly impermissible comment must be evaluated in the context in which it was made at trial. In this case, the trial court found that the prosecutor did not manifestly intend to

comment on Schenck's failure to testify, and the nature of the statement was not such that the jury would naturally and necessarily take it to be such a comment. Rather, the statement was meant to draw the jury's attention to Schenck's conduct on the videotape, "behavior that the State believed constituted testimony of Schenck's impairment. The State wanted to impress upon the jury the probative value of Schenck's demeanor captured on the videotape, despite the fact that he had not 'testified' in court[,]" and that was why the prosecutor had used "air quotes" to indicate he was making a distinction between any reference to Schenck's in-court testimony and his "testimony" on the videotape.

We agree. Moreover, and

> even assuming the statement was an improper comment on [Schenck's] failure to testify, considering that the comment did not appear intentionally designed to or likely to urge any negative inference, the context in which the comment was made, and the strength of the evidence against [Schenck], . . . , we conclude that any error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967); *Raheem v. State*, 275 Ga. 87 (7) (560 SE2d 680) (2002)[, overruled in part by *Patel v. State*, 282 Ga. 412, 413, n. 2 (651 SE2d 55) (2007)].

*Billings v. State*, 278 Ga. 833, 835 (4) (607 SE2d 595) (2005). See also *Cannon*, 288 Ga. at 230 (6) (c).

2. Schenck also challenges the sufficiency of the evidence, arguing that the evidence established only that he had been drinking, not that he was less safe to drive. However, the evidence as set forth above, as well as other evidence presented at trial, was more than sufficient to establish not only that Schenck had been drinking, but that he was a less safe driver because he was impaired. This enumeration thus also presents no basis for reversal.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 16, 2011.

*Benjamin D. Goldberg*, for appellant.
*Kermit N. McManus, District Attorney, Benjamin B. Kenemer, Assistant District Attorney*, for appellee.