300 Ga. 429
FINAL COPY

S16A1430.  KILGORE v. THE STATE.

HINES, Chief Justice.

Jonathan Kilgore appeals the denial of his motion for new trial, as amended, and his convictions and sentences for felony murder while in the commission of aggravated assault, aggravated assault, and two counts of possession of a firearm during the commission of a felony in connection with the fatal shooting of John Reid and the firing of a handgun at Jarvis Winder. Kilgore challenges certain portions of the State's closing argument as improperly commenting on his right to remain silent and as being burden shifting; he also challenges the effectiveness of his trial counsel for not objecting to the allegedly improper comments.  Finding the challenges to be without merit, we affirm.[1]

---

[1]The crimes occurred on February 2, 2003. On March 23, 2004, a Fulton County grand jury returned a multi-count indictment charging Kilgore, along with James Ward and Devoka Finch, with malice murder; two counts of felony murder; burglary; two counts of aggravated assault; three counts of conspiracy to commit a crime; and three counts of possession of a firearm during the commission of a felony. The indictment contained an additional charge against Kilgore of possession of a firearm by a convicted felon, but that charge was dead docketed.  Originally Kilgore was tried jointly with Ward before a jury May 19-23, 2006, and both men were found guilty on all counts, and sentenced thereon.  Kilgore's and Ward's convictions and sentences were reversed on appeal and they received

The evidence construed to support the verdicts showed the following. Kilgore, his older brother Devoka Finch, and James Ward planned to rob Reid, a drug dealer, in order for Finch to obtain drugs and money to pay a fine involving Finch's probation. Finch found out about Reid from Kilgore, and Finch enlisted Ward to get a ride to Reid's house in Fulton County on the evening of February 2, 2003. Once parked near the home, the men further discussed the plan to rob Reid. They decided that Kilgore would approach the house first because Reid knew him and would let him in. Finch would then enter and handcuff those inside, and the three men were "going to get everything." Kilgore was armed with a small caliber handgun, and Ward was armed with a .45 caliber pistol and a .357 caliber revolver. Finch was wearing

a new trial due to the violations of their state constitutional rights to be present at all critical stages of the proceedings when the trial court dismissed a juror ex parte and in the absence of a waiver by either of them. See *Ward v. State*, 288 Ga. 641 (706 SE2d 430) (2011). Kilgore was retried before a jury, jointly with Ward, August 13-20, 2012, and Kilgore was found guilty of felony murder while in the commission of the aggravated assault of Reid; the aggravated assault with a deadly weapon of Reid; the aggravated assault of Winder; possession of a firearm during the commission of the felony of the aggravated assault of Reid; and possession of a firearm during the commission of the aggravated assault of Winder; he was acquitted of the remaining counts. Kilgore was sentenced to life in prison for felony murder, a consecutive 20 years in prison for the aggravated assault of Winder, and consecutive terms of five years in prison for each firearm possession count; the aggravated assault of Reid merged with the felony murder for the purpose of sentencing. A motion for new trial was filed on September 1, 2012, and the motion was amended on June 2, 2014, and November 4, 2014. The motion for new trial, as amended, was denied on December 2, 2014. Kilgore's notice of appeal was filed on December 5, 2014, and his appeal was docketed in the September 2016 term of this Court. The case was orally argued on October 3, 2016.

a bullet-proof vest under his clothing and had handcuffs with him. Kilgore went to the back door of the house, and Reid let him in while Finch and Ward hid outside. Reid's friend, Winder, was in the house when Reid allowed Kilgore to enter. After Kilgore was inside, Reid went briefly to the back of the house while Kilgore stayed in the kitchen. When Reid returned, there was gunfire. Ward had pushed past Finch and entered the house firing his pistol. When the shooting started, Finch fled into a nearby wooded area. Reid and Winder attempted to run to a back bedroom. Winder was following Reid when Reid collapsed and died from a fatal gunshot wound. Winder managed to grab a shotgun from the bedroom and was headed to the front of the house when Kilgore spied him and fired a shot at him but missed. Kilgore and Winder exchanged gunfire. Kilgore and Ward, who had been wounded, left the house and fled the scene by car. Winder went to a neighbor's house, and the police were summoned.

Finch was arrested nearby and told police of the plan to rob Reid, but maintained that he had not killed anyone. He further stated that Kilgore and Ward were armed with handguns, and that Ward fired repeatedly at Reid. Winder was also at the police station and encountered Finch there; he identified

3

Finch as one of the perpetrators. Winder also identified Kilgore in a subsequent photographic lineup.

After the fatal shooting, Kilgore returned to the apartment where he was staying. Kilgore was carrying a .22 caliber handgun. The beige shirt he was wearing had blood on it, and Kilgore told a woman who was at the apartment that there had been a shootout and that the blood was Ward's. That evening, Ward, using a fictitious name, received treatment at a local hospital for multiple gunshot wounds. Several weeks later, police learned that Kilgore was at his mother's apartment, and when they arrived they observed Kilgore trying to hide in a pile of clothing. He then attempted to flee and resist the officers.

1. Although Kilgore does not challenge the legal sufficiency of the evidence of his guilt, in keeping with this Court's general practice in appeals of murder cases, this Court has reviewed the record and concludes that the evidence at trial was sufficient to enable a rational trier of fact to find Kilgore guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. During closing argument and in response to defense claims in concluding argument that Kilgore and his co-defendant Ward did not know of

4

any plan to rob Reid and were merely present at the crime scene, the prosecutor stated:

> Distractions, ladies and gentlemen. Then they want you to say, well, they didn't know it was a robbery planned. But they can't deny being there, so they've got to come up with an excuse, so it was, we was just there, we didn't know what was going on, we wasn't part of it.

Kilgore challenges the very next statements by the prosecutor:

> Because see, otherwise, they would be able to say something else. But you know they're there.

He contends that such statements amounted to an impermissible comment on his right to remain silent and improperly shifted the burden of proof from the State to him, and that the trial court should have taken curative measures.

However, such contentions are unavailing. Kilgore did not object to the cited argument; therefore, he has waived his right to rely upon it as a basis for reversal of his convictions. *Gates v. State*, 298 Ga. 324, 329 (4) (781 SE2d 772) (2016). Even if such objection had been preserved, it does not aid Kilgore.

An argument that the defendant has not rebutted or explained the State's evidence does not amount to an improper burden-shifting argument. *Ellington v. State*, 292 Ga. 109, 142 (10) (a) (735 SE2d 736) (2012). As for a

5

determination of whether a prosecutor has improperly commented on an accused's right to remain silent, it involves an evaluation as to whether the prosecutor's manifest intention was to do just that or whether the remarks were such that a jury would naturally and necessarily take the remarks to be a comment on the accused's right to remain silent and not to testify. *Jennings v. State*, 282 Ga. 679, 681-682 (4) (653 SE2d 17) (2007).

The prosecutor's remarks do not satisfy either prong of the test. *Jennings*, supra. They were not directed at Kilgore's right to remain silent, i.e., his decision not to testify; they were in response to the defense argument regarding the State's case and the defense's failure to counter the State's evidence.  Id.; *Johnson v. State*, 271 Ga. 375, 383 (15) (a) (519 SE2d 221) (1999). Consequently, curative measures were not warranted.

3. Inasmuch as the cited remarks by the prosecutor were not improper as urged by Kilgore, trial counsel's failure to object to them cannot support Kilgore's claim that trial counsel provided ineffective assistance in that regard. *Hendrix v. State*, 298 Ga. 60, 66 (2) (d) (779 SE2d 322) (2015).

Judgments affirmed.  All the Justices concur.

Decided January 23, 2017.

Murder. Fulton Superior Court. Before Judge Ellerbe.

Ryan C. Locke, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Joshua D. Morrison, Sheila E. Gallow, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.