**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 1, 2020**

# In the Court of Appeals of Georgia

A20A0686. THOMAS v. THE STATE.

BARNES, Presiding Judge.

After his first trial ended in a mistrial due to a hung jury, Rasheed Thomas was tried and convicted of rape and two counts of aggravated child molestation, and the trial court denied his motion for new trial. Thomas elected to testify in his first trial but not in his second trial. During the second trial, the State introduced into evidence Thomas's testimony from the first trial, including the colloquy between Thomas and the trial judge in which Thomas elected to testify. On appeal, Thomas contends that the trial court erred in admitting into evidence at the second trial the colloquy from his first trial. Thomas argues that by introducing into evidence the colloquy from his first trial, the State impermissibly highlighted his decision not to testify in his second trial, thereby prejudicing him before the jury. Thomas also contends that his trial

counsel rendered ineffective assistance in several respects. For the reasons discussed below, we affirm.

Thomas was indicted on the charged offenses based on allegations that he sexually abused his stepdaughter. Viewed in the light most favorable to the verdict,[1] the evidence presented at trial showed that the stepdaughter was eight years old when her mother married Thomas. During the marriage, Thomas would hit the mother and leave bruises on her, but she did not report the abuse to the police because Thomas threatened her. The mother told another relative that Thomas hit her and that she could not leave him. The stepdaughter saw Thomas physically abuse her mother.

Thomas would discipline the stepdaughter by beating her with his fists and striking her with a belt or other objects, leaving bruises that at times were so severe that she had to stay home from school. As discipline, Thomas also would force the stepdaughter to do calisthenics, eat baby food, or drink alcohol until she vomited.

The family moved frequently because Thomas was in the military. When the stepdaughter was ten years old and the family lived in Washington State, Thomas began forcing her to have sexual intercourse with him. After the first incident, the stepdaughter told her mother what Thomas had done to her. The mother pulled down

---

[1] See *Richardson v. State*, 277 Ga. App. 429, 430 (2) (626 SE2d 518) (2006).

2

the stepdaughter's clothes "to check" her vaginal area, said that she did not see any redness, and accused the stepdaughter of lying. Thomas thereafter forced his stepdaughter to have sexual intercourse with him multiple times a week at the house in Washington.

The family moved to Georgia, where the sexual abuse continued. When the family lived in Cobb County, Thomas forced the stepdaughter to have vaginal and anal intercourse with him. The intercourse was painful and caused the stepdaughter to bleed. The sexual abuse usually occurred on the stepdaughter's bed at night or in the living room. The mother would either be asleep in the parents' bedroom or away from home running errands. The last incident of sexual abuse occurred about a week before Thanksgiving in November of 2010, when the stepdaughter was eleven years old. Around that time, the stepdaughter again told her mother that Thomas was sexually abusing her, but her mother said that she did not believe her and told her to stop lying.

Shortly after the last incident of sexual abuse, the stepdaughter visited the home of her aunt and cousin for the Thanksgiving holiday. A few days before her twelfth birthday, on the evening of November 26, 2010, the stepdaughter and her cousin were at the kitchen table coloring. While doing so, the stepdaughter wrote a

3

note in crayon and gave it to her cousin. The note read, "He had sex with me." The cousin asked if the note was true, and the stepdaughter said that it was true and had been occurring since she was ten years old. She identified Thomas as the man who had sex with her. The stepdaughter asked her cousin not to tell the aunt about the note. However, the aunt took the note and read it, and the stepdaughter told her that it was true. The stepdaughter appeared to be scared and threatened to commit suicide if she had to return home.

While coloring with her cousin, the stepdaughter also had written a note to her mother that she crumpled up and attempted to throw away but missed the trash can. That note read, "Dear Mom, Rasheed had sex with me and I didn't want to tell you about it and I'm staying at [my aunt's] house until you divorce him." The aunt later found the note behind the trash can.

After the police were contacted, a detective who had training in the forensic interviewing of child victims conducted a recorded forensic interview with the stepdaughter. During the interview, the stepdaughter described how Thomas sexually abused her.

Once the forensic interview was completed, the police obtained a search warrant for the Cobb County residence and executed the warrant in the early morning

4

hours of November 28, 2010. During the search, the police seized the comforter on the stepdaughter's bed and other items. Testing of the comforter revealed seminal fluid, and DNA testing was performed on the stains. The results showed DNA from two individuals. The first DNA profile matched Thomas, and the second DNA profile matched the stepdaughter. A DNA sample was later obtained from the mother, and her DNA profile was not found on the comforter stains.

On the day that the search warrant was executed, officers also conducted recorded interviews with Thomas and the mother after they were advised of their *Miranda* rights.[2] Thomas denied sexually abusing his stepdaughter. The mother admitted that the stepdaughter had told her that Thomas had sexually abused her. The mother also was adamant that she and Thomas never had sexual intercourse on the stepdaughter's bed or comforter.

The stepdaughter underwent a forensic medical examination on December 10, 2010. The exam revealed no signs of injury, which the nurse examiner later testified was not unusual in sexual abuse cases, particularly where more than 72 hours had passed since the last sexual contact.

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Following his arrest and indictment, Thomas was tried on the rape and aggravated child molestation charges in April 2015, but a mistrial was declared because of a hung jury. Thomas's second trial was conducted in August 2016.

During the second trial, the stepdaughter (who was then seventeen years old) testified to the physical and sexual abuse as summarized above. The State called several other witnesses, including the stepdaughter's mother,[3] cousin, several aunts, a former foster parent, and the stepdaughter's counselor, who described the stepdaughter's disclosures to them about the abuse. The State also introduced into evidence, among other things, the two notes written by the stepdaughter at her aunt's house, her recorded forensic interview in which she described the abuse, Thomas's recorded police interview, and the DNA evidence relating to the comforter. Additionally, the State introduced into evidence Thomas's testimony from the first trial, including the colloquy between Thomas and the trial court regarding his election to testify in that trial.

---

[3] The mother was indicted on one count of cruelty to children in the first degree in that she unlawfully and maliciously caused the stepdaughter, "a child under 18 years of age, cruel and excessive mental pain by[ ] failing to take proper action to protect the child from sexual acts committed by Rasheed Thomas, after having been informed by the child that such acts were occurring." The mother pled guilty to that charge, was given a probationary sentence, and agreed to testify truthfully at Thomas's trial.

6

The jury found Thomas guilty of the charged offenses. Thomas filed a motion for new trial, as amended, in which he contended, among other things, that his trial counsel rendered ineffective assistance. Following a hearing where trial counsel testified, the trial court denied Thomas's motion. This appeal followed.

1. Thomas contends that the trial court erred in allowing the State to introduce, as part of his trial testimony from the first trial, his colloquy with the trial court in which the court advised him of his right to testify or not testify and his election to do so in that trial. According to Thomas, the admission of the colloquy from the first trial highlighted to the jury his decision not to testify in the second trial. Thomas acknowledges that admission of the colloquy "was not a direct, explicit comment on [his] invocation of silence at the second trial," but he argues that its admission nevertheless violated his rights under the Fifth Amendment to the United States Constitution and Article I, Section I, Paragraph XVI of the Georgia Constitution because it enabled the jury to unfavorably contrast his election to testify at his first trial with his election not to do so at the second trial.

As an initial matter, Thomas did not raise this specific objection at trial. Before the second trial, the State filed a motion in limine seeking to introduce Thomas's testimony from the first trial, and the trial court conducted a hearing on the motion.

7

At the hearing, the State noted that included with the prior testimony that it sought to introduce was the colloquy between the trial judge and Thomas in which Thomas was advised of his rights and elected to testify. In opposing the State's motion in limine, Thomas argued that his prior testimony could be introduced only for the limited purpose of impeachment and thus was inadmissible unless he chose to testify again in the second trial. Thomas made no specific objection that admission of the colloquy as part of the prior trial testimony would violate his constitutional rights. After hearing from the parties, the trial court ruled in favor of the State on its motion in limine. Later, at the trial, Thomas did not raise any additional objections when the colloquy and prior testimony were admitted into evidence.

To preserve an objection on a specific ground for ordinary appellate review, objection on that ground must be raised prior to admission of the challenged evidence at trial. See *Harris v. State*, __ Ga. __ (2) (a) (No. S19A1572, decided Jan. 13, 2020); *Sneed v. State*, 337 Ga. App. 782, 785 (1) (b) (788 SE2d 892) (2016). Because Thomas did not make a specific objection to the admission of the colloquy on the ground now asserted on appeal, we review his claim only for plain error. See OCGA § 24-1-103 (d); *Harris*, __ Ga. at __ (2) (a).

In regard to a plain-error review of a ruling on evidence, the analysis consists of four parts. First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Thus, beyond showing a clear or obvious error, plain-error analysis requires the appellant to make an affirmative showing that the error probably did affect the outcome below.

(Citation and punctuation omitted.) *Wilson v. State*, 301 Ga. 83, 88 (2) (799 SE2d 757) (2017). See *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016). "Satisfying all four prongs of this standard is difficult, as it should be." (Citation and punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

Thomas has not demonstrated plain error in the admission of the colloquy. While Thomas argues that admission of the colloquy violated his constitutional rights because it enabled the jury to negatively contrast his election to testify at his first trial

9

with his election not to do so at his second trial, Thomas cites no legal authority that supports his novel argument, and we have found none. The trial court specifically instructed the jury in the second trial that "[i]f the Defendant chooses not to testify, you may not consider in any way that decision in making your decision," and "[w]e presume that the jury follows the trial court's instructions." *Taylor v. State*, 306 Ga. 277, 286 (3) (b) (830 SE2d 90) (2019). Furthermore, "[f]or an error to be obvious for purposes of plain error review, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule," and that is not the case here.[4] (Citation, punctuation, and emphasis omitted.) *Cheddersingh v. State*, 290 Ga. 680, 685 (2), n. 5 (724 SE2d 366) (2012). See *Simmons v. State*, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016) ("An error cannot be plain where there is no controlling authority

---

[4] In the context of a remark made by a prosecutor, in determining whether the remark was an improper comment on the defendant's failure to testify that constitutes reversible error, we ask whether "(1) the prosecutor's manifest intention was to comment on the accused's failure to testify, or (2) the remark was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify." (Citation and punctuation omitted.) *Schenck v. State*, 307 Ga. App. 890, 892 (1) (706 SE2d 218) (2011). Applying that test by analogy, we note that Thomas did not allege that the prosecutor manifestly intended to comment on his failure to testify in the second trial in seeking the admission of the colloquy. Moreover, the nature of the colloquy was not such that the jury would naturally and necessarily take it to be a comment on Thomas's decision not to testify in the second trial, particularly in light of the jury instruction discussed above.

on point.") (citation and punctuation omitted). Thomas thus has failed to show plain error in the admission of the colloquy at his second trial.

2. Thomas also contends that his trial counsel provided ineffective assistance in several respects.

> To obtain relief on a claim of ineffective assistance of counsel, a defendant must show both that his lawyer's performance was deficient and that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). An attorney performs deficiently under *Strickland* if he does so in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Prejudice is shown by demonstrating a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. If the defendant fails to satisfy either the deficient performance or the prejudice prong of the *Strickland* test, this Court is not required to examine the other.

(Citations and punctuation omitted.) *Thomas v. State*, 303 Ga. 700, 702-703 (2) (814 SE2d 692) (2018). Guided by these principles, we turn to Thomas's specific claims of ineffective assistance.

(a) Thomas contends that his trial counsel rendered ineffective assistance by failing to object to testimony from several witnesses that Thomas physically abused

11

the mother. According to Thomas, evidence of his abusive conduct towards the mother constituted improper character evidence, and his trial counsel was deficient for failing to object to it. We disagree.

Evidence is relevant under the Georgia Evidence Code if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "Whether to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue." (Citation and punctuation omitted.) *Hernandez v. State*, 304 Ga. App. 435, 437 (3) (696 SE2d 155) (2010).

The State presented evidence that Thomas began sexually abusing his stepdaughter when she was ten years old, but that she delayed disclosing the sexual abuse to anyone but her mother until November of 2010, shortly before her twelfth birthday, when she made her disclosure to her cousin and aunt. The stepdaughter's delay in disclosure is pertinent to the analysis here because "evidence of a defendant's history of violence toward a victim, a victim's family, or even a witness, is admissible to explain a delay by the victim, her family, or another witness in reporting a crime."

12

(Citation and punctuation omitted.) *Allen v. State*, 345 Ga. App. 599, 607 (4) (814 SE2d 740) (2018).

As to Thomas's history of violence, in addition to evidence that Thomas physically abused the stepdaughter, the stepdaughter, her mother, and an aunt testified about Thomas's physical abuse of the mother during the course of the marriage. The mother further testified that Thomas left marks and bruises on her "a lot" and that the stepdaughter had seen Thomas's abusive conduct towards her. The stepdaughter testified that she was scared of Thomas and was worried about other "people getting in trouble" if she disclosed the sexual abuse. Additionally, the cousin to whom the stepdaughter disclosed the sexual abuse testified that the stepdaughter said that she was scared of Thomas, and a Department of Family and Children Services caseworker testified that the stepdaughter said that "there was abuse in the home, and she was afraid her mom would be hurt" because she had disclosed the sexual abuse.

Given the record in this case, we conclude that evidence reflecting that Thomas physically abused the mother was admissible because, like the evidence of the physical abuse of the stepdaughter, it was "probative of whether [Thomas's] behavior created a threatening atmosphere in the home, and would have therefore tended to

13

explain the [stepdaughter's] reluctance to disclose the abuse." *Allen*, 345 Ga. App. at 608 (4).

> Evidence of the beatings of both [the stepdaughter] and her [mother] provide[d] a cogent explanation for [the stepdaughter's] failure to report the sexual abuse for [many] months. Thus evidence of the beatings [made] it more probable that [the stepdaughter] failed to report the sexual abuse not because it never took place, but because of her fear of retribution.

*United States v. Powers*, 59 F3d 1460, 1465 (II) (A) (4th Cir. 1995). Accordingly, an objection to the admission of the physical abuse evidence on the grounds that it was irrelevant or constituted impermissible character evidence would have been meritless, and trial counsel therefore did not perform deficiently by failing to make such an objection. See *Ivey v. State*, 305 Ga. 156, 162 (2) (c) (824 SE2d 242) (2019) (failure to raise a meritless objection does not constitute deficient performance).[5]

---

[5] In a separate claim of ineffective assistance, Thomas maintains that his trial counsel was deficient by failing to raise a specific constitutional objection to the admission of the colloquy from the first trial. In this regard, Thomas contends that his trial counsel should have raised the same novel constitutional objection and argument that we discussed and rejected supra in Division 1 under our plain error analysis. "Trial counsel's failure to raise this novel legal argument does not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Washington v. State*, 271 Ga. App. 764, 765 (1) (610 SE2d 692) (2005). See *Hughes v. State*, 266 Ga. App. 652, 655 (3) (a) (598 SE2d 43) (2004) (noting that "the standard for

(b) Thomas also argues that his trial counsel rendered ineffective assistance by failing to object to testimony of the stepdaughter's therapist that allegedly bolstered the credibility of the stepdaughter. Again, we disagree.

During the trial, defense counsel cross-examined the stepdaughter's therapist and elicited the following testimony:

> Q: And in your job do you deal at all with situations where children's stories are changing about what has happened to them?
> A: In terms of abuse?
> Q: In terms of anything.
> A: I guess stories can always change with children or adults.
> Q: Do you challenge them on that as to whether or not they are telling you the truth or not?
> A: Yes.
> Q: All right. Because you need to know if it is truthful or not to know how you can do your job?
> A: Right.

---

effectiveness of counsel does not require a lawyer to . . . pursue novel theories of defense") (citation and punctuation omitted). Furthermore, as reflected in Division 1, such a constitutional objection would have been meritless in light of the jury charge that was given, and "failure to raise a meritless objection cannot support a finding of ineffective assistance." *Gude v. State*, 306 Ga. 423, 429 (3) (a) (831 SE2d 807) (2019). See *Kilgore v. State*, 300 Ga. 429, 432 (3) (796 SE2d 290) (2017) (concluding that trial counsel was not deficient for failing to object to prosecutor's remarks because they did not constitute an improper comment on the defendant's failure to testify).

15

Q: All right. And do you recall ever challenging [the stepdaughter] on her stories about what happened to her, whether physical abuse or sexual abuse?

A: Did I challenge her on that?

Q: Right.

A: I don't think so.

Q: All right. You weren't aware, again, of anything she may have said before; and whether or not what she was telling you was consistent with that or not?

A: Yes.

Q: And would that have been helpful to your therapy if you were aware that she was telling stories that were changing from time to time?

A: Well, not necessarily. Because I think in her case particularly when you have a child that is abused, you're going to have stories to change very often. Because there are all sorts of implications once you report the abuse.

Q: All right. And you would not account for that at all as a child is making up a story?

A: I think that a child can make up a story, *but I don't think that is what occurred in her situation*, particularly when you're talking about children of abuse.

Q: But you had no background information to know what had happened to her situation, other than what she told you on May 31st when you first met with her?

A: And her aunt, yes.

(Emphasis supplied.)

According to Thomas, his trial counsel should have objected to or moved to strike the therapist's response – "I think that a child can make up a story, but I don't think that is what occurred in her situation" – because it improperly bolstered the

16

credibility of the stepdaughter in the eyes of the jury. "To show that this failure to object constituted ineffective assistance, however, [Thomas] must demonstrate that the failure was constitutionally deficient, which requires [him] to overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." (Citation and punctuation omitted.) *Priester v. State*, 350 Ga. App. 200, 205 (4) (828 SE2d 439) (2019). "[T]o overcome that presumption, [Thomas] must show that no reasonable counsel would have failed to object to the [alleged] bolstering testimony of the [therapist]." *Jones v. State*, 292 Ga. 593, 600-601 (7) (d) (740 SE2d 147) (2013). Moreover, the alleged bolstering testimony was elicited from trial counsel during cross-examination, and "[t]he scope of cross examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Citation and punctuation omitted.) *Damerow v. State*, 310 Ga. App. 530, 538 (4) (a) (ii) (714 SE2d 82) (2011).

At the hearing on the motion for new trial, Thomas's trial counsel testified on direct examination that he had no specific recollection of making a strategic decision as to whether or not to object to the therapist's testimony and that, in his view, the testimony was objectionable because it was nonresponsive and constituted improper bolstering of the stepdaughter. But "[t]he fact that trial counsel could not specifically

17

recall why he did not object to [the therapist's] testimony and that he admits in hindsight he should have objected is of no consequence to our assessment" in light of the objective standard that applies in assessing counsel's performance. *Hartsfield v. State*, 294 Ga. 883, 888 (3) (b) (757 SE2d 90) (2014). "A proper assessment of the performance of counsel 'calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.'" *Jones*, 292 Ga. at 601 (7) (d), n. 7, quoting *Harrington v. Richter*, 562 U. S. 86, 110 (IV) (A) (1) (131 SCt 770, 178 LE2d 624) (2011).

A reasonable lawyer in the present case might not have objected to the alleged bolstering testimony in order to highlight the therapist's bias in favor of the stepdaughter. Failing to object to bolstering testimony to show that the witness was biased in favor of the victim and rushed to judgment about whether the victim was molested is a reasonable strategic decision. See *Rawls v. State*, 315 Ga. App. 891, 896 (4) (b) (730 SE2d 1) (2012). And, in fact, trial counsel testified at the new trial hearing that in his cross-examination of the therapist, he was generally attempting "to show as her therapist that she might be weighing in favor of the allegation without being objective" and "to point out that anything that she said that sounded in favor of these allegations was her opinion, not based on a good skepticism." Furthermore,

18

a competent defense attorney reasonably could have chosen not to object to the therapist's brief comment so as not to draw attention to it before the jury. See *Jones*, 292 Ga. at 601 (7) (d). Because we cannot say that trial counsel's failure to object to the therapist's testimony was objectively unreasonable under the circumstances, Thomas has not shown that his counsel's performance was deficient and therefore cannot succeed on his ineffective assistance claim. See id. at 602 (7) (d). See also *Priester v. State*, 350 Ga. App. 200, 205-206 (4) (828 SE2d 439) (2019) ("Georgia cases have recognized that the failure to object to bolstering can also be part of a reasonable trial strategy.").

(c) Thomas maintains that his trial counsel provided ineffective assistance by failing to object to a remark made by the prosecutor during closing argument that Thomas contends was an expression of the prosecutor's own opinion, based on her experience as a trial lawyer, about the veracity of criminal defendants. Thomas, however, has failed to establish that his counsel's failure to object constituted deficient performance.

During closing argument, the prosecutor commented:

This is real life; it is not television. It is not wrapped up in a nice neat little bow. We don't get the full episode in one hour. The Defendant doesn't always confess. *In fact, most of the time in this courtroom, the*

19

> *Defendant is lying.* Real life talks about someone wanting to go home with her mom and [her aunt]. If it was a giant scheme or plan, she would have to be an Academy Award winning actress to be able to cry the way she did, to write down all this stuff. She has to be – I don't know how to describe it.

(Emphasis supplied.) According to Thomas, his trial counsel was deficient in failing to object to the prosecutor's statement that "most of the time in this courtroom, the Defendant is lying." But "a reasonable lawyer might have concluded that objecting to the statement during closing arguments would have simply emphasized the statement and magnified any harmful implications from it." *Whitelock v. State*, 349 Ga. App. 28, 42 (3) (825 SE2d 426) (2019). Indeed, at the hearing on the motion for new trial, Thomas's trial counsel first stated that he did not have a strategic reason for not raising an objection, he then acknowledged that he generally avoids objecting to closing argument, and that this could have played into his consideration here.

> With the benefit of hindsight, one can always argue that trial counsel's failure to object was something that no reasonable trial lawyer would do. Our task, however, is to determine whether, in the throes of closing argument, no reasonable attorney, listening to the inflection of the speaker's voice and judging the jurors' reactions, would choose to remain silent instead of objecting and calling attention to the improper argument. Here, [Thomas's] attorney reasonably chose silence, and we will not use hindsight to second-guess that decision on appeal.

20

(Citation and punctuation omitted.) *Rawls*, 315 Ga. App. at 898 (4) (d). Consequently, Thomas cannot show that his trial counsel performed deficiently and thus cannot succeed on his ineffective assistance claim.

*Judgment affirmed. Gobeil, J., and Senior Appellate Judge Herbert E. Phipps concur.*