In the Supreme Court of Georgia

Decided: September 30, 2025

S25A0446. BAILEY et al. v. McINTOSH COUNTY et al.
S25A0447. WEBSTER v. McINTOSH COUNTY.
S25A0448. McINTOSH COUNTY v. WEBSTER et al.

ELLINGTON, Justice.

These appeals arise out of litigation surrounding a revised zoning ordinance passed by the McIntosh County Board of Commissioners ("Board"), which purportedly increased the allowable maximum dwelling size in a historic district on Sapelo Island ("Ordinance"). Several McIntosh County residents opposed the revision and petitioned for a referendum to repeal the Ordinance under the provision of the Georgia Constitution granting home rule to counties ("Home Rule Provision"), and the McIntosh County probate court granted their petition. McIntosh County ("County"), however, filed the current action in superior court to stop the probate court from proceeding with the referendum. The superior court granted the County's petition, but it also enjoined the County

from enforcing the Ordinance during the pendency of the appeal of the superior court's ruling. For the reasons set forth below, we conclude that the superior court erred in halting the referendum and reverse, but we affirm the superior court's injunction of the Ordinance pending appeal.

On July 9, 2024, County residents Barbara Bailey, Christopher Bailey, and Stanley Walker (collectively "the Intervenors") filed a verified petition pursuant to subsection (b)(2) of the Home Rule Provision. See Ga. Const. of 1983, Art. IX, Sec. II, Par. I (b)(2).[1] The

---

[1] That subsection provides, in pertinent part:

[R]epeals of ordinances, resolutions, or regulations adopted pursuant to subparagraph (a) hereof may be initiated by a petition filed with the judge of the probate court of the county containing, in cases of counties with a population of 5,000 or less, the signatures of at least 25 percent of the electors registered to vote in the last general election; in cases of counties with a population of more than 5,000 but not more than 50,000, at least 20 percent of the electors registered to vote in the last general election; and, in cases of a county with a population of more than 50,000, at least 10 percent of the electors registered to vote in the last general election, which petition shall specifically set forth the exact language of the proposed amendment or repeal. The judge of the probate court shall determine the validity of such petition within 60 days of its being filed with the judge of the probate court. In the event the judge of the probate court determines that such petition is valid, it shall be his duty to issue the call for an election for the purpose of submitting such amendment or repeal to the registered electors of the county for their approval or rejection. Such call shall

petition asked the probate court to set a special election for a referendum to allow County voters to determine whether the Ordinance should be repealed ("Referendum Petition").[2] On July 23, 2024, McIntosh County Probate Judge Harold Webster entered an order verifying the Referendum Petition and setting a special election on the repeal issue for October 1, 2024 ("Referendum Order").

However, on July 22, 2024, the day before the Referendum Order was entered, the County initiated the current litigation by

be issued not less than ten nor more than 60 days after the date of the filing of the petition. He shall set the date of such election for a day not less than 60 nor more than 90 days after the date of such filing.... If more than one-half of the votes cast on such question are for approval of the amendment or repeal, it shall become of full force and effect; otherwise, it shall be void and of no force and effect. The expense of such election shall be borne by the county, and it shall be the duty of the judge of the probate court to hold and conduct such election. Such election shall be held under the same laws and rules and regulations as govern special elections, except as otherwise provided herein.

Ga. Const. of 1983, Art. IX, Sec. II, Par. I (b)(2).

[2] Another group of County electors, not including the Intervenors, filed a prior, but apparently unsuccessful, petition for writ of mandamus, declaratory judgment, and injunctive and equitable relief in superior court in connection with the Ordinance. The superior court stated that it took judicial notice of the filings in that litigation , but that matter is not a part of these appeals and the filings in that litigation do not appear in the appellate records.

filing a "Verified Petition for Writ of Prohibition and Complaint for Declaratory Relief" against Judge Webster in the County's superior court ("County's Petition"). The County's Petition asked the superior court to prohibit Judge Webster from "exercising jurisdiction over the Referendum Petition" and for a judgment "declaring the Referendum Petition and any actions taken pursuant thereto to be void." The Intervenors subsequently filed a motion to intervene in this action, which was granted without objection. The superior court's order also set a hearing for September 20, 2024, on the County's Petition.

Following that hearing, on September 25, 2024, the superior court issued its order granting the County's request for declaratory relief and a writ of prohibition.[3] The superior court found in its

---

[3] During the course of this litigation, the County moved for permission to add the Board of Elections and Registration of McIntosh County, along with the individual members of that board, (collectively the "Elections Board") as party respondents. The superior court granted the County's motion without objection. The County then filed an amended petition adding the Elections Board as respondents and asserting a new claim for a writ of mandamus against Judge Webster and the Elections Board to stop them from, inter alia, "[c]ontinuing to hold a special election." In its order, the superior court issued a declaratory judgment and granted the County a writ of prohibition against

4

order that the Ordinance in this case was passed pursuant to the grant of zoning power under Article IX, Section II, Paragraph IV of the 1983 Georgia Constitution ("Zoning Provision"), and not under the Home Rule Provision, which provides that "[t]he governing authority of each county and of each municipality shall have legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law applicable thereto." Ga. Const. of 1983, Art. IX, Sec. II, Par. I (a). In contrast, the Zoning Provision provides: "The governing authority of each county and of each municipality may adopt plans and may exercise the power of zoning. This authorization shall not prohibit the General Assembly from enacting general laws establishing procedures for the exercise of such power." Ga. Const. of 1983, Art.

_____

the Elections Board and Judge Webster, but it did not address the claim for mandamus relief. Consequently, the mandamus issue is not before this Court, and the Elections Board did not appeal the superior court's order. We express no opinion on whether it was proper to add the Elections Board as respondents in this proceeding.

5

IX, Sec. II, Par. IV. The superior court reasoned that to hold that the Ordinance was adopted pursuant to the Home Rule Provision would be to render the grant of power under the Zoning Provision "mere surplusage." The superior court determined that the Zoning Provision addresses a long-existing grant of zoning power to counties that predated the more general constitutional grant of legislative power to counties provided under subparagraph (a) of the Home Rule Provision. The superior court concluded, therefore, that the County's exercise of its zoning powers was not subject to the referendum process under subsection (b)(2) of the Home Rule Provision and that Judge Webster thus exceeded his jurisdiction by verifying the Referendum Petition and setting a special election.

The Intervenors then filed an emergency motion for an injunction to prevent enforcement of the Ordinance pending the appeal, and the superior court granted that motion, enjoining enforcement of the Ordinance pending further order of that court or pending a ruling in this Court that would "negate" the injunction (the "Injunction").

6

In Case No. S25A0446, the Intervenors ask this Court to reverse the superior court's Order; in Case No S25A0447, Judge Webster seeks the same relief, but on somewhat different grounds; and in Case No. S25A0448, the County appeals the superior court's entry of the Injunction.

*Case Nos. S25A0446 and S25A0447*

1. On appeal, the Intervenors first contend that the County lacks standing to contest the Referendum Petition. But "we held in *County of DeKalb v. City of Atlanta*, 132 Ga. 727 (1909), that DeKalb County had standing to bring an action to enjoin the City of Atlanta from holding an election, the result of which would place all the territory included within the corporate limits of the City of Atlanta in either Fulton or DeKalb Counties." *Cherokee County v. City of Holly Springs*, 284 Ga. 298, 299 (2008). In explaining that decision, we said that "[t]his Court thus recognized a county's interest in contesting the legality of a proceeding which seeks to annex property within its jurisdiction." Id. The Intervenors rely in part on that longstanding precedent, yet we see no meaningful distinction from

7

that precedent here, where a county has contested the legality of a proceeding that could result in the repeal of an ordinance, duly enacted by that county, that regulates property within its territory.[4]

2. In their respective appeals, the Intervenors and Judge Webster assert that the superior court erred in concluding that the Ordinance is not subject to the referendum procedures of the Home Rule Provision because counties exercise zoning powers under the separate Zoning Provision such that the referendum procedures of the Home Rule Provision do not apply to zoning ordinances.

(a) In analyzing the parties' arguments in this regard, we consider first whether the absence of the Ordinance in the appellate record precludes our review. In its order granting the County's petition for declaratory relief and a writ of prohibition, the superior

---

[4] In light of this longstanding precedent, we need not address the more general question of how to assess the standing of counties (and other governmental entities) within the framework of constitutional standing set out in decisions like *Sons of Confederate Veterans v. Henry County Bd. of Commissioners*, 315 Ga. 39 (2022), and *Wasserman v. Franklin County*, 320 Ga. 624 (2025). We note, however, that those decisions addressed constitutional standing in the context of private litigants seeking redress for the violation of their rights. When governmental entities seek redress in court, they often do so to enforce the law or vindicate certain rights of their citizens, not the "rights" of the governmental entity itself. We leave for another day any questions about how to address a county's standing in other contexts.

court stated that there was no copy of the Ordinance in the superior court record in this litigation, and no copy of the Ordinance appears in the appellate records before us. The absence of the Ordinance in the appellate record may matter because under Georgia law, courts are not permitted to take judicial notice of a county ordinance unless proven by the litigants through the introduction of the original ordinance or a properly certified copy into evidence. See *Whitfield v. City of Atlanta*, 296 Ga. 641, 641 (2015) ("City and county ordinances must be alleged and proven in order to be considered by the superior and appellate courts of this State." (citations omitted)); OCGA § 24-2-221 (judicial notice may be taken of certified copy of ordinance).

But this rule does not answer the question of whether this Court is required to have a certified copy of the Ordinance in the record in order to consider the issue of whether the Ordinance was subject to the referendum procedures of the Home Rule Provision. To answer that question, we note first that this case requires consideration of the probate court's actions in reviewing and verifying the Intervenors' Referendum Petition under that

provision. As we explained in *Camden County v. Sweatt*, 315 Ga. 498 (2023), the filing of such a petition initiates a unique constitutional procedure that "[is] not based on the violation of any private right," 315 Ga. at 506 n.15, and that is not subject to the pleading requirements of Georgia's Civil Practice Act, OCGA §§ 9-11-1, et seq. Rather, the filing of the petition "[is] based on the home rule power conferred on counties … and the concomitant power conferred on the electorate to amend or repeal an ordinance, resolution, or regulation adopted by a county's governing authority." *Sweatt*, 315 Ga. at 506 n.15. The requirements for such a petition are set out in the Home Rule Provision itself, as follows: (1) the petition must contain the signatures of a specified percentage "of the electors registered to vote in the last general election" depending on the county's population; and (2) the "petition shall specifically set forth the exact language of the proposed amendment or repeal." Ga. Const. of 1983, Art. IX, Sec. II, Par. I (b)(2).[5] Notably, there is no

---

[5] The County does not contend that the Intervenors failed to comply with these constitutional requirements.

requirement that the petitioners plead or prove the underlying ordinance, resolution, or regulation for which repeal is sought. Moreover, the Home Rule Provision does not provide for an appeal or challenge to the *grant* of a petition for referendum, although the Home Rule Provision does require that if "the judge of the probate court determines that such petition was not valid, he shall cause to be published in explicit detail the reasons why such petition is not valid; provided, however, that in any proceeding in which the validity of the petition is at issue, the tribunal considering such issue shall not be limited by the reasons assigned." Id.

Here, the appellate records demonstrate that the Intervenors filed their verified petition in the probate court averring that they were seeking a special election on the matter of a "revised zoning ordinance," and setting forth the exact language on which they sought the referendum as follows: "Shall the Action of the Board of Commissioners of McIntosh County, Georgia, amending the McIntosh County Code of Ordinances Appendix C Sec. 219 HH Hog Hammock District of the McIntosh County *Zoning* Ordinance be

11

repealed?" (Emphasis added.) Judge Webster's Referendum Order acknowledged that the Intervenors sought a special election in connection with a revised zoning ordinance and set the special election on the exact question contained in the Referendum Petition. The County's verified petition in this litigation challenging the grant of the Referendum Petition acknowledged that it sought "a special election for the purpose of submitting the County's … zoning decision to the registered voters of McIntosh County for their approval or rejection." The County initiated this litigation to stop that special election, in part, on the ground that the Ordinance at issue involved zoning, which the County contends is not subject to the referendum procedures of the Home Rule Provision. Therefore, the record establishes that the Intervenors sought, and the probate court granted, a referendum under the special procedures of the Home Rule Provision on the issue of whether a revised zoning ordinance should be repealed.

We see no basis under the procedures set out in the Home Rule Provision to have required the Intervenors to produce a certified

12

copy of the Ordinance in connection with the Referendum Petition for the probate court to consider. Likewise, there is no basis for requiring the parties to produce a certified copy of the Ordinance in connection with the County's superior court challenge to the Referendum Order on the ground that the home rule referendum procedures do not apply, particularly here where the record includes the Referendum Order and Referendum Petition, both of which state that the referendum under the Home Rule Provision was to allow the electorate to consider a revised zoning ordinance. Thus, even though a certified copy of the Ordinance does not appear in the appellate records in these appeals, we conclude that we also can consider the legal question whether the Ordinance is subject to the constitutional referendum procedures in the Home Rule Provision, and we limit our review accordingly. See *Sweatt*, 315 Ga. at 506–11 (addressing a similar legal issue regarding application of Home Rule referendum procedures to county resolutions without review or analysis of the resolutions themselves).

(b) Turning to the merits, we note that the Georgia

13

Constitution provides that the legislative power of the State is vested in the General Assembly. See Ga. Const. of 1983 Art. III, Sec. I, Par. I. But subparagraph (a) of the Constitution's Home Rule Provision, while recognizing the General Assembly's legislative power, directly grants counties the legislative power to adopt ordinances, resolutions, and regulations. The full text of that subparagraph provides:

> The governing authority of each county shall have legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law applicable thereto. Any such local law shall remain in force and effect until amended or repealed as provided in subparagraph (b). This, however, shall not restrict the authority of the General Assembly by general law to further define this power or to broaden, limit, or otherwise regulate the exercise thereof. The General Assembly shall not pass any local law to repeal, modify, or supersede any action taken by a county governing authority under this section except as authorized under subparagraph (c) hereof.

Ga. Const. of 1983, Art. IX, Sec. II, Par. I(a). Subparagraph (c) of the Home Rule Provision prohibits a county's exercise of its legislative authority under subparagraph (a) and the exercise of the repeal

14

procedures under subparagraph (b) with regard to a list of eight designated matters, but a county's zoning power is not one of the prohibited matters.[6]

Although counties are granted the power of zoning under a separate paragraph of the 1983 Constitution, that paragraph

---

[6] Subparagraph (c) provides:
The power granted to counties in subparagraphs (a) and (b) above shall not be construed to extend to the following matters or any other matters which the General Assembly by general law has preempted or may hereafter preempt, but such matters shall be the subject of general law or the subject of local acts of the General Assembly to the extent that the enactment of such local acts is otherwise permitted under this Constitution:
(1) Action affecting any elective county office, the salaries thereof, or the personnel thereof, except the personnel subject to the jurisdiction of the county governing authority.
(2) Action affecting the composition, form, procedure for election or appointment, compensation, and expenses and allowances in the nature of compensation of the county governing authority.
(3) Action defining any criminal offense or providing for criminal punishment.
(4) Action adopting any form of taxation beyond that authorized by law or by this Constitution.
(5) Action extending the power of regulation over any business activity regulated by the Georgia Public Service Commission beyond that authorized by local or general law or by this Constitution.
(6) Action affecting the exercise of the power of eminent domain.
(7) Action affecting any court or the personnel thereof.
(8) Action affecting any public school system.
Ga. Const. of 1983 Art. IX, Sec. II, Par. I (c).

15

contains no separate grant of legislative power to pass zoning ordinances. Moreover, the Constitution grants counties a number of other supplementary powers under other constitutional provisions, see Ga. Const. of 1983, Art. IX, Sec. II, Pars. III and V,[7] but no separate grant of legislative power appears in those paragraphs expressly authorizing counties to adopt ordinances in the exercise of the zoning power or any of the other listed powers granted them.[8]

---

[7] Subsection (a) of Ga. Const. of 1983, Art. IX, Sec. II, Par. III, provides that counties, municipalities, and "any combination thereof" may exercise the following powers and provide the following services: "[p]olice and fire protection"; "[g]arbage and solid waste collection and disposal"; "[p]ublic health facilities and services"; "[s]treet and road construction and maintenance"; "[p]arks, recreational areas, programs, and facilities"; "[s]torm water and sewage collection and disposal systems"; "[d]evelopment, storage, treatment, purification, and distribution of water"; "[p]ublic housing"; "[p]ublic transportation"; "[l]ibraries, archives, and arts and sciences programs and facilities"; "[t]erminal and dock facilities and parking facilities"; "[c]odes, including building, housing, plumbing, and electrical codes"; "[a]ir quality control"; and "[t]he power to maintain and modify heretofore existing retirement or pension systems" as well as "the power to create and maintain retirement or pension systems for elected and appointed public officers and employees." The governing authority of each county is also granted the authority to exercise the power of eminent domain as defined in Ga. Const. of 1983, Art. IX, Sec. II, Par. V.

[8] We note, however, counties are granted limited legislative power to create special districts for the provision of local government services and to levy and collect associated fees, assessments, and taxes by ordinance or resolution under Ga. Const. of 1983, Art. IX, Sec. II, Par. VI. The language of that provision, however, demonstrates that it has no application to the zoning power granted under the Zoning Provision.

16

In construing the Home Rule and Zoning Provisions of the 1983 Constitution, it is useful to first review the prior constitutional provisions governing those powers. See *Sweatt*, 315 Ga. at 506 (beginning analysis of Home Rule Provision with a brief review of the history of home rule); *Ammons v. State*, 315 Ga. 149, 161 (2022) ("[N]o reasonable observer during the drafting and ratification of the 1983 Constitution would have understood the provisions of the proposed new constitution to be understood without reference to the construction of their predecessors."). See generally *Forsyth County v. Ga. Transmission Corp.*, 280 Ga. 664, 668 (2006) (noting, in context of a constitutional challenge to a county ordinance, that "constitutional provisions must be presumed to have been framed and adopted in the light and understanding of prior and existing laws and with reference to them." (citation and quotation marks omitted)); *Clarke v. Johnson*, 199 Ga. 163, 166 (1945) (same, in context of interpreting amendment to constitution).

As explained more fully below, that review shows an evolution in the Georgia Constitution's treatment of the county home rule and

zoning powers, both of which first were granted in the same 1966 constitutional amendment. The 1966 provision granting counties zoning power also included an express grant of the power to enact zoning ordinances. The constitutional grant of a separate, express power to enact zoning ordinances continued until the adoption of the current Georgia Constitution, which contains no specific grant of that authority distinct from the general legislative power granted counties in the Home Rule Provision. Moreover, although the original 1966 home rule provision expressly excluded county zoning power from its reach, that exclusion was eliminated in the subsequent 1976 and 1983 Georgia Constitutions, removing any explicit obstacle to a county's use of the home rule legislative power to pass zoning ordinances.

Counties were first granted home rule legislative power when, in 1966, the state's voters ratified a home rule amendment to the Georgia Constitution of 1945 ("1966 Amendment"). See *Sweatt*, 315 Ga. at 506. The county home rule provision in the 1966 Amendment contained similar language to that found in the current Home Rule

18

Provision, granting counties legislative power and setting out a referendum procedure by which the county electorate could initiate a procedure for repeal of legislative measures adopted pursuant to that authority. See Ga. Const. of 1945 Art. XV, Sec. II, Par. I (1966). A separate paragraph of the 1966 Amendment also directly granted zoning power to counties for the first time,[9] providing that "[t]he governing authority of each county *is empowered to enact* for unincorporated areas of the county appropriate planning and zoning ordinances for public safety, historic, health, business, residential,

---

[9] Prior to the 1966 Amendment, earlier versions of the Georgia Constitution granted the General Assembly authority to confer zoning power on counties. See Ga. Const. of 1945, Art. III, Sec. VII, Par. XXIII (providing the General Assembly with "the authority to grant the governing authorities of the municipalities and counties authority to pass zoning and planning laws"); Ga. Const. of 1877, Art. III, Sec. VII Par. XXVI (1937) (granting the General Assembly authority to grant zoning powers to counties and municipalities having a population of 1,000 or more). See also *Matthews v. Fayette County*, 233 Ga. 220, 223 (1974) (noting that "the 1966 Amendment gave counties direct authority to enact zoning and planning laws"); *Johnston v. Hicks*, 225 Ga. 576, 581 (1969) (holding that the ratification of that 1966 Amendment impliedly repealed the earlier constitutional provisions giving the General Assembly authority to confer zoning power on counties). Therefore, the superior court erred in finding with reference to counties that "[c]onstitutional zoning power existed long before the legislature and ultimately the people approved of even the idea of home rule." Although earlier constitutional provisions granted counties the potential for zoning power if the legislature voted to grant it, counties received their constitutional grant of zoning power at the same time they received the grant of home rule legislative power, in the 1966 Amendment.

19

and recreational purposes." Ga. Const. of 1945, Art. XV, Sec. II, Par. III (1966) (emphasis added). In addition, the home rule paragraph of the 1966 Amendment expressly provided that "[n]othing in this Paragraph shall affect the provisions" of the amendment's zoning paragraph. Const. of 1945, Art. XV, Sec. II, Par. I(e) (1966). Accordingly, the 1966 Amendment contained a separate and express grant of legislative power to counties to adopt zoning ordinances and expressly excluded zoning from the general grant of home rule legislative power and the procedures by which the electorate could petition for a referendum to overturn a county's legislative measures.

The 1976 Georgia Constitution restructured the constitutional provisions governing counties, moving the grant of zoning power out of the section of the Constitution addressing county home rule, see Ga. Const. of 1976, Art. IX, Sec. II, and into a constitutional provision granting a list of supplementary powers to counties in the section addressing "General Provisions Applicable to Local Governments." See Ga. Const. of 1976, Art. IX, Sec. IV, Par. II (15).

20

The supplementary powers provision also gave counties a separate grant of legislative power to facilitate the exercise of the listed powers, including zoning, as follows:

> Each county and municipality, and any combination thereof, shall have the authority *to enact ordinances* and to contract with each other in pursuance of this Paragraph and for the purpose of carrying out and effectuating the powers herein conferred upon such political subdivision and in order to provide such services.

See Ga. Const. of 1976, Art. IX, Sec. IV, Par. II (emphasis added). Although the 1976 Constitution's home rule provision contained similar language to the home rule provision in the 1966 Amendment, it removed the amendment's language expressly preventing the provision's application to the paragraph granting zoning power. See Ga. Const. of 1976, Art. IX, Sec. II, Par. I. Accordingly, under the 1976 Constitution, counties retained a separate and express grant of legislative power to adopt zoning ordinances, but the home rule provision no longer excluded the zoning power from its application.

The ratification of the current constitution in 1983 returned the Zoning Provision to the section addressing home rule, but as

noted above, that provision no longer states that the governing authority "is empowered to enact" or has "the authority to enact" zoning ordinances as in the 1966 Amendment and the 1976 Georgia Constitution. Instead, the current Zoning Provision permits a county to "adopt plans" and "exercise the power of zoning." See Ga. Const. of 1983, Art. IX, Sec. II, Par. IV. Moreover, as noted above, the current Home Rule Provision does not prohibit the application of its procedures, including the referendum process, to a county's zoning power. See Ga. Const. of 1983, Art. IX, Sec. II, Par. I(c).

Against this backdrop, we turn to the well-established rules of constitutional construction to determine the meaning of the text of the current Home Rule and Zoning Provisions. The original public meaning of the text is our starting point, that is, "we look for the meaning the people understood a provision to have at the time they enacted it." *Sweatt*, 315 Ga. at 509 (citation and quotation marks omitted). "That meaning is in turn determined by considering the common and customary usages of the words, as informed by their context, including the broader legal backdrop — constitutional,

22

statutory, decisional, and common law — in which the text was adopted." *Wasserman v. Franklin County*, 320 Ga. 624, 628 (2025) (citation and quotation marks omitted). Additionally, we also must construe constitutional provisions to make the Constitution's "parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the drafters intended that any part would be without meaning." *Sweatt*, 315 Ga. at 509 (citation and punctuation omitted). Applying these principles, we determine that, in the 1983 Constitution, unlike prior versions of the Georgia Constitution, it is the Home Rule Provision, not the Zoning Provision, that provides the express grant of legislative power enabling a county to exercise its zoning power by ordinance. That provision grants a county's governing authority the "legislative power to adopt clearly reasonable ordinances, resolutions or regulations relating to its property, affairs, and local government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law applicable thereto." Although the Zoning Provision broadly grants zoning

powers to counties, that provision contains no express reference to the legislative authority to enact ordinances. The legislative power to enact ordinances, including those related to zoning, is instead explicitly granted in the Home Rule Provision. And that grant is broad enough to encompass a county's exercise of its zoning power as it grants a county power to adopt "ordinances, resolutions, or regulations relating to its property, affairs, and local government," and zoning necessarily concerns the use of property within a county's territorial boundaries.[10]

---

[10] We acknowledge that under subparagraph (a) of the Home Rule Provision, a county only has the power to adopt ordinances "for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law applicable thereto" and that the General Assembly has enacted a series of statutes known as the Zoning Procedure Laws ("ZPL"), see OCGA § 36-66-1, et seq. But the stated purpose of the ZPL, which expressly recognizes and confirms "the authority of local governments to exercise zoning power within their respective territorial boundaries," is "to establish as state policy *minimum procedures* governing the exercise and means of judicial review of the exercise of that power." OCGA § 36-66-2(a) (emphasis added). See also Ga. Const. of 1983, Art. IX, Sec. II, Par. IV (explaining that the grant of zoning power to counties "shall not prohibit the General Assembly from enacting general laws establishing procedures for the exercise of such power"). The ZPL, therefore, does not affect the validity of any county ordinance so long as it is enacted in accordance with the ZPL's minimum procedural requirements. See generally *McClure v. Davidson*, 258 Ga. 706, 710 (1988). Accordingly, the ZPL is not a general law that has made provision for the subject matter of any county zoning decision and thus it does not preclude the use of the home rule power to enact a zoning ordinance.

This reading does not otherwise diminish the extent of zoning power granted to counties under the Zoning Provision or render that provision mere surplusage. The power granted by the Home Rule Provision encompasses more than enacting zoning ordinances, and the power granted by the Zoning Provision is broader than merely the power to enact zoning ordinances. The Zoning Provision itself expressly includes the power to adopt zoning plans, and in enacting procedures to be followed in the exercise of the zoning power, the General Assembly defined the term "zoning" broadly to include other actions by counties regulating the development and improvement of property within the county. See, e.g., OCGA § 36-66-3 (defining the term "zoning" under the Zoning Procedure Laws as "the power of local governments to provide within their respective territorial boundaries for the zoning or districting of property for various uses and the prohibition of other or different uses within such zones or

Moreover, the ZPL is part of Article 36 of the Georgia Code addressing local governments, and OCGA § 36-70-5 in the same article provides that, with the exception of provisions prohibiting inactive municipalities from exercising zoning power, "nothing in this article shall limit or compromise the right of the governing body of any county or municipality to exercise the power of zoning."

districts and for the regulation of development and the improvement of real estate within such zones or districts in accordance with the uses of property for which such zones or districts were established").[11]

Moreover, the changes in the structure and the language of the

---

[11] The County argues that the Home Rule Provision cannot apply to zoning ordinances because the Home Rule Provision and the Zoning Provision use different terminology in describing the General Assembly's retention of authority with regard to the powers granted to counties under each provision. The Zoning Provision states the grant of zoning power to counties "shall not prohibit the General Assembly from enacting general laws establishing procedures for the exercise of such power" while the Home Rule Provision says that the grant of home rule power "shall not restrict the authority of the General Assembly by general law to further define this power or to broaden, limit, or otherwise regulate the exercise thereof." The County appears to argue that the terminology regarding zoning procedures in the Zoning Provision would be mere surplusage if the broader terminology describing the legislature's retained authority in the Home Rule Provision applied to zoning ordinances. But although the Home Rule Provision describes the General Assembly's retained authority more broadly, the Zoning Provision's express grant of the power of zoning and planning to counties and municipalities, in and of itself, necessarily restricts the legislature's retained power "to further define or to broaden, limit, or otherwise regulate" a local government's exercise of its zoning and planning powers under the Home Rule Provision. Therefore, the language in the Zoning Provision reserving the General Assembly's power to establish zoning procedures does not impose a lesser restriction on the legislature's retained authority but rather clarifies that the Zoning Provision's inherent restriction of the General Assembly's authority over zoning and planning does not preclude it from passing general laws addressing such procedures. Accordingly, we reject the County's argument.

1983 Constitution support this understanding of the two provisions. The current constitution returns the grant of county zoning power to the section addressing home rule, reversing the prior constitution's placement of that grant elsewhere; eliminates any separate express grant of legislative power for enacting zoning ordinances; and, unlike the 1966 Amendment, does not expressly exclude the zoning power from the application of the Home Rule Provision. Although the 1983 Constitution returned the grant of the zoning power to its own separate paragraph, the absence of an express exclusion for zoning in the Home Rule Provision is significant to our analysis. Notably, the constitutional grant to counties of the power of eminent domain also is placed in its own separate paragraph in the current constitution, see Ga. Const. of 1983, Art. IX, Sec. II, Par. V, but subparagraph (c) of the Home Rule Provision expressly prohibits the application of that provision's subparagraphs (a) and (b) to any "[a]ction affecting the exercise of the power of eminent domain," see Ga. Const. of 1983, Art. IX, Sec. II, Par. I(c)(6). We conclude, therefore, that the placement of the

27

grant of zoning power in a separate paragraph did not remove that power from the Home Rule Provision as demonstrated by subparagraph (c)'s lack of any exclusion of the zoning power from the procedures set out in subparagraphs (a) and (b) of that provision and that although the County was exercising the broad zoning powers granted in the Zoning Provision when it adopted the Ordinance, it was doing so through the legislative power granted to counties under the Home Rule Provision.

(c) We previously determined in *Sweatt* that subsection (b)(2) of the Home Rule Provision authorizes a county's electorate to petition the County's probate court for a special election to consider the repeal of an ordinance, resolution, or regulation adopted pursuant to subparagraph (a), see 315 Ga. at 508–12, and further authorizes the county probate judge "to consider the [e]lectors' [p]etition to determine whether it met the requirements under that provision for obtaining a referendum on the issue," id. at 511. Moreover, subsection (b)(2) provides that where the probate judge determines that such a petition is valid, "it shall be his *duty* to issue

28

the call for an election for the purpose of submitting such ... repeal to the registered electors of the county for their approval or rejection." Ga. Const. of 1983, Art. IX, Sec. II, Par. I (b)(2) (emphasis added). And, as explained above, nothing in the text of the Zoning Provision in any way restricts a county electorate's authority to seek repeal of a zoning ordinance. The superior court therefore erred in concluding that Judge Webster acted without authority in considering the Referendum Petition and in setting a special election for a referendum on the issue of whether the Ordinance should be repealed.[12]

Accordingly, we reverse the superior court's order, which granted the County declaratory relief to halt the referendum and issued a writ of prohibition against Judge Webster based on a finding that the Home Rule Provision did not apply. See *Sweatt*, 315 Ga. at 513 (reversing grant of declaratory relief preventing a special election and grant of writ of prohibition against probate judge who

---

[12] Given this conclusion, we need not reach the other arguments put forth by Judge Webster in his Appellant's brief.

acted within his jurisdiction under the Home Rule Provision in setting the election because a writ of prohibition is intended "to prevent a tribunal possessing judicial powers from exercising jurisdiction over matters [outside] its cognizance") (citation and quotation marks omitted)).

*Case No. S25A0448*

In this appeal, the County seeks reversal of the superior court's orders imposing an injunction against the enforcement of the Ordinance until further order of that court and pending the Intervenors' appeal. The County asserts that the injunction improperly "alters the status quo" by not allowing the approval of building permit applications "to construct residences at 3,000 square feet irrespective of the outcome of the referendum election." The County further asserts that the superior court erred by misapplying the standard for injunctions under OCGA § 9-11-62(c) and by granting the injunction under that authority without evidentiary support. The County also contends that the injunction violates the separation of powers provision of the Georgia Constitution, see Ga.

30

Const. of 1983, Art. I, Sec. II Par. III, by enjoining a lawful zoning ordinance where the legality of that ordinance is not at issue.

However, the County cannot prevail on these arguments as the injunction on which they are based necessarily turns on the alleged text of the Ordinance and its predecessor. Because those documents are not included in the appellate record, we cannot take judicial notice of them and thus we cannot consider the County's arguments. See, e.g., *Edwards v. City of Warner Robins,* 302 Ga. 381, 388 (2017) (determining that where appellants failed to put a certified copy of the relevant zoning ordinance provisions in the record, no competent evidence supported assertion that the ordinance resulted in an improper taking of their property); *Whitfield*, 296 Ga. at 641 (holding that the absence of ordinance in appellate record prevented review of appellant's claim that ordinance was unconstitutional); *Strykr v. Long County Bd. of Comm'rs*, 277 Ga. 624, 626 (2004) (declining to address appellant's constitutional challenge to portions of county ordinance because courts cannot consider arguments addressing alleged language in an ordinance not proved).

Even though the Intervenors bore the burden with regard to the injunction in the superior court, see *Howard v. Smith*, 226 Ga. 850, 852 (1970),[13] as the appellant, the County bears the burden on appeal of showing error in the record. See *Tavarez v. State*, 319 Ga. 480, 483, n.4 (2024) (Any ambiguity or lack of evidence in the appellate record does not help the appellant, who bears the burden of showing error in the record on appeal.); *McKoy v. State*, 303 Ga. 327, 333 (2018) (It is "axiomatic that a conclusion that reversible

---

[13] We express no opinion as to whether the superior court properly granted the injunction when the Ordinance apparently did not appear in the trial record in this litigation. We note that the superior court took judicial notice of another proceeding in its court with respect to the Ordinance, which may or may not have included a certified copy of that document, but the record from that case is not before this Court. See *Petkas v. Grizzard*, 252 Ga. 104, 106 (1984) ("court may take judicial notice of its own records in the immediate case or proceedings before it") (citation and quotation marks omitted); *State Dep't of Revenue v. McCray*, 215 Ga. 678, 680 (1960) (same); *Roberts v. Roberts*, 201 Ga. 357, 359 (1946) (same). Therefore, given the presumption of regularity, we cannot say that the superior court did not properly have the Ordinance before it in entering the injunction. See, e.g., *Westmoreland v. State*, 287 Ga. 688, 696–97 (2010) (determining that where this Court lacked information regarding the identification, or the circumstances surrounding the admission, of allegedly objectionable evidence, it "must apply the presumption of regularity and hold that the trial court discharged her duties properly"); *Holmes v. Roberson-Holmes*, 287 Ga. 358, 361 (2010) (recognizing that "[t]here is a presumption of regularity that attaches to all official acts, which includes judicial proceedings," and applying that presumption where absence of hearing transcript in appellate record prevented resolution of issues surrounding evidence presented at hearing).

error occurred requires a showing of error and harm and that an appellant has the burden of proving trial court error by the appellate record.") (citation and punctuation omitted)). Without proper proof of the Ordinance or its predecessor, the County cannot show such error. Therefore, the superior court's injunction orders must be affirmed.

*Judgment reversed in Case Nos. S25A0446 and S25A0447. Judgment affirmed in Case No. S25A0448. All the Justices concur.*